BRENT J. NEWELL (State Bar No. 210312)
LAW OFFICES OF BRENT J. NEWELL
245 Kentucky Street, Suite A4
Petaluma, CA 94952
Tel: (661) 586-3724
brentjnewell@outlook.com

Attorney for Plaintiffs
Central California Environmental Justice
Network, Committee for a Better Arvin,
Medical Advocates for Healthy Air, and
Healthy Environment for All Lives

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

# SACRAMENTO DIVISION

| | |
|---|---|
| CENTRAL CALIFORNIA ENVIRONMENTAL JUSTICE NETWORK, a nonprofit corporation, COMMITTEE FOR A BETTER ARVIN, a nonprofit corporation, MEDICAL ADVOCATES FOR HEALTHY AIR, a nonprofit corporation, and HEALTHY ENVIRONMENT FOR ALL LIVES, an unincorporated association, <br><br> Plaintiffs, <br><br> v. <br><br> LIANE RANDOLPH, in her official capacity as Chair of the Air Resources Board, STEVEN CLIFF, in his official capacity as Executive Officer of the Air Resources Board, SANDRA BERG, JOHN EISENHUT, DANIEL SPERLING, JOHN BALMES, DIANE TAKVORIAN, DEAN FLOREZ, HECTOR DE LA TORRE, DAVINA HURT, BARBARA RIORDAN, PHIL SERNA, NORA VARGAS, TANIA PACHECO-WERNER, and GIDEON KRACOV, in their official capacities as Board Members of the Air Resources Board, CONNIE LEYVA and EDUARDO GARCIA, in their official capacities as *Ex Officio* Board Members of the Air Resources Board, SAN JOAQUIN VALLEY UNIFIED AIR POLLUTION CONTROL DISTRICT, and the GOVERNING BOARD OF THE SAN JOAQUIN VALLEY UNIFIED AIR POLLUTION CONTROL DISTRICT, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

COMPLAINT

# INTRODUCTION

1. Plaintiffs Central California Environmental Justice Network, Committee for a Better Arvin, Medical Advocates for Healthy Air, and Healthy Environment for All Lives (collectively "Valley EJ Organizations") file this Clean Air Act citizen suit to improve air quality and protect public health in the San Joaquin Valley.

2. Ozone air pollution in the San Joaquin Valley air basin has caused, and continues to cause, a public health crisis. According to the American Lung Association's State of the Air 2022 report, the San Joaquin Valley air basin ranks among the worst in the United States. Kern, Tulare, and Fresno counties are the fourth, fifth, and sixth most ozone-polluted counties in the United States. The Valley cities of Bakersfield, Visalia, and Fresno-Madera-Hanford rank as the second, third, and fourth most ozone-polluted cities.

3. The Clean Air Act reflects a model of cooperative federalism, whereby the U.S. Environmental Protection Agency ("EPA") sets health-based National Ambient Air Quality Standards ("NAAQS" or "standards") and states develop the attainment plans and plan revisions to achieve those standards. EPA shall approve a plan or plan revision as part of the State Implementation Plan if the plan or plan revision meets the minimum requirements of the Act. Upon approval as part of the State Implementation Plan, the plan or plan revision becomes federal law, enforceable by EPA and citizens, and does not change unless and until EPA approves a revision to the State Implementation Plan.

4. In 1997, the EPA promulgated a NAAQS for ozone of 0.08 parts per million averaged over an 8-hour period. The EPA designated the San Joaquin Valley as an extreme ozone nonattainment area for this standard and set a deadline to meet the standard by June 15, 2024.

5. In 2012, EPA approved the attainment plan to meet the 1997 8-hour ozone standard adopted by the California Air Resources Board ("CARB") and the San Joaquin Valley Unified Air Pollution Control District. The attainment plan includes a commitment by CARB to develop, adopt, and submit by 2020 attainment contingency measures meeting the requirements of section 172(c)(9) of the Act, 42 U.S.C. § 7502(c)(9).

6. EPA approved the attainment contingency measures commitment and identified the commitment in the State Implementation Plan.

COMPLAINT                                              1

7. Defendants have violated and continue to violate an emission standard or limitation by failing to develop, adopt, and submit the attainment contingency measures meeting the requirements of section 172(c)(9), 42 U.S.C. § 7502(c)(9).

8. Valley EJ Organizations respectfully request injunctive and declaratory relief to remedy Defendants' violation of an emission standard or limitation.

## JURISDICTION

9. This Court has jurisdiction over any person, including Defendants acting in their official capacities pursuant to *Ex Parte Young*, 209 U.S. 923 (1908), who is alleged to have violated or to be in violation of an emission standard or limitation pursuant to 42 U.S.C. § 7604(a)(1) (citizen suit provision of the Clean Air Act) and 28 U.S.C. § 1331 (federal question jurisdiction).

10. The injunctive and declaratory relief Valley EJ Organizations request is authorized by 28 U.S.C. §§ 2801(a) and 2202, and 42 U.S.C. § 7604.

11. On July 29, 2022, Valley EJ Organizations provided Defendants written notice of the violation of the emission standard or limitation alleged in this action at least 60 days before commencing this action, as required by Clean Air Act section 304(b)(1), 42 U.S.C. § 7604(b)(1) and 40 C.F.R. §§ 54.2 and 54.3. A copy of the notice letter, sent by certified mail, return receipt requested, is attached as Exhibit 1. Although more than 60 days have elapsed since Valley EJ Organizations provided written notice, Defendants have failed to adopt and submit attainment contingency measures and remain in violation of the Clean Air Act.

12. The EPA has not commenced and is not diligently prosecuting a civil action in a court of the United States or a State to require Defendants' compliance with the commitment to develop, adopt, and submit attainment contingency measures.

## VENUE

13. Venue lies in the Eastern District of California pursuant to 28 U.S.C. § 1391(b)(1) because CARB has its office in Sacramento County and because the Air District has its offices in Stanislaus, Fresno, and Kern counties.

## INTRADISTRICT ASSIGNMENT

14. Because the violation of an emission standard or limitation alleged in this Complaint

COMPLAINT 2

relates to the commitment by CARB to adopt attainment contingency measures, assignment to the Sacramento Division of this Court is proper under Civil L.R. 120 because CARB has its office in Sacramento County.

**PARTIES**

15. Plaintiff CENTRAL CALIFORNIA ENVIRONMENTAL JUSTICE NETWORK is a nonprofit corporation based in Fresno and Bakersfield, California. CCEJN's mission is to empower our communities and secure our children's future by eliminating negative environmental impacts in low-income and communities of color in the Central Valley.

16. Plaintiff COMMITTEE FOR A BETTER ARVIN is a nonprofit corporation based in Arvin, California. CBA's mission is to improve the quality of life in Arvin, to inform and unite the community, to address problems facing the community, and to secure equality for all residents. CBA and its members have engaged in advocacy for improved local and regional air quality for many years and are especially concerned about the impacts of oil and gas production in the San Joaquin Valley.

17. Plaintiff MEDICAL ADVOCATES FOR HEALTHY AIR is a nonprofit corporation based in Fresno, California. MAHA's members consist of medical professionals living in the San Joaquin Valley who regularly treat patients suffering from respiratory ailments that are caused or exacerbated by the Valley's unhealthy levels of air pollution. Its mission is to advocate for the expeditious attainment of state and federal health-based air quality standards in the San Joaquin Valley through public education, litigation, and other means.

18. Plaintiff HEALTHY ENVIRONMENT FOR ALL LIVES is an unincorporated association based in Avenal, California. HEAL's mission is to advocate for transformational social change to bring environmental, climate, educational, and economic justice to marginalized communities on the westside of the San Joaquin Valley. As part of its environmental justice work, HEAL advocates for reducing air pollution.

19. Plaintiffs CENTRAL CALIFORNIA ENVIRONMENTAL JUSTICE NETWORK, COMMITTEE FOR A BETTER ARVIN, MEDICAL ADVOCATES FOR HEALTHY AIR, and HEALTHY ENVIRONMENT FOR ALL LIVES are each a person within the meaning of section 302(e) of the Clean Air Act, 42 U.S.C. § 7602(e), and may commence a civil action under section 304(a) of the

Act, 42 U.S.C. § 7604(a).

20. Members of Valley EJ Organizations live, raise their families, work, and recreate in the San Joaquin Valley Air Basin. They are adversely affected by exposure to levels of ozone air pollution that exceed the health-based National Ambient Air Quality Standards. The adverse effects of such pollution include actual or threatened harm to their health, their families' health, their professional, educational, and economic interests, and their aesthetic and recreational enjoyment of the environment in the San Joaquin Valley.

21. Members of Plaintiff MEDICAL ADVOCATES FOR HEALTHY AIR are medical professionals who treat patients suffering from ozone-related health effects, have participated in substantial research on the health effects of ozone, and are concerned about the adverse health effects ozone has on their patients, sensitive groups, and the public.

22. Defendants' violation of the emission standard or limitation causes Valley EJ Organizations members' injuries because Defendants have failed to implement the Clean Air Act's remedial scheme.

23. Defendants' violation of the emission standard or limitation causes Valley EJ Organizations members' injuries because the threat that the San Joaquin Valley will fail to attain the 1997 8-hour ozone standard and trigger the attainment contingency measures makes the causal chain neither hypothetical nor conjectural given the historical record and current ozone levels reported by the EPA.

24. The EPA has found that the San Joaquin Valley has failed to attain several National Ambient Air Quality Standards by their respective deadlines. *See* 66 Fed. Reg. 56476 (Nov. 8, 2001) (1-hour ozone standard failure to attain by 1999); 67 Fed. Reg. 48039 (July 23, 2002) (PM-10 standard failure to attain by 2001); 76 Fed. Reg. 82133 (December 30, 2011) (1-hour ozone standard failure to attain by 2010); 81 Fed. Reg. 84481 (November 23, 2016) (1997 24-hour and annual PM2.5 standards failure to attain by 2015).

25. The San Joaquin Valley has not attained the 1997 8-hour ozone standard. EPA data show design values for 2018-2020 and 2019-2021 remaining flat at 0.93, well above the 0.84 design value necessary to attain the standard.

COMPLAINT 4

26. Defendants' violation of an emission standard or limitation has injured and continues to injure Valley EJ Organizations' members. The injunctive relief requested in this lawsuit would redress these injuries by compelling Defendants to adopt the attainment contingency measures, which Congress required as an integral part of the remedial scheme for improving air quality in areas violating the NAAQS. The declaratory relief requested in this lawsuit would further redress these injuries by declaring that Defendants have a duty to adopt attainment contingency measures and have violated that duty.

27. CARB is the state agency that the California Legislature designated as the air pollution control agency for all purposes set forth in federal law. Cal. Health & Safety Code § 39602. CARB has primary authority for the control of air pollution from mobile sources. Cal. Health & Safety Code §§ 39002, 39500. CARB also has the obligation to prepare the State Implementation Plan, coordinate the activities of the local air districts, and ensure the districts meet their responsibilities under the Clean Air Act. Cal. Health & Safety Code §§ 39002, 39500, 39602, and 41650.

28. Defendant LIANE RANDOLPH is sued in her official capacity as Chair of the California Air Resources Board. LIANE RANDOLPH is charged in that role with leading the Board to fulfill CARB's duties under California law and the Clean Air Act, and is a voting member of the Board.

29. Defendant STEVEN CLIFF is sued in his official capacity as the Executive Officer of the California Air Resources Board. STEVEN CLIFF is charged in that role with implementing CARB's programs and policies with delegated authority from the Board.

30. Defendants SANDRA BERG, JOHN EISENHUT, DANIEL SPERLING, JOHN BALMES, DIANE TAKVORIAN, DEAN FLOREZ, HECTOR DE LA TORRE, DAVINA HURT, BARBARA RIORDAN, PHIL SERNA, NORA VARGAS, TANIA PACHECO-WERNER, and GIDEON KRACOV are sued in their official capacities as Board Members for the California Air Resources Board. They are charged in their role as Board Members to fulfill CARB's duties under California law and the Clean Air Act and are voting members of the Board.

31. Defendants Senator CONNIE LEYVA and Assembly Member EDUARDO GARCIA are sued in their official capacities as *ex officio* Board Members of the California Air Resources Board. Defendants CONNIE LEYVA and EDUARDO GARCIA are appointed as nonvoting Board Members

COMPLAINT                                5

pursuant to California Health & Safety Code § 39510(i).

32. Defendant SAN JOAQUIN VALLEY UNIFIED AIR POLLUTION CONTROL DISTRICT is one of thirty-five air quality management districts established under the California Health & Safety Code to develop and implement strategies for reducing emissions from stationary sources in their respective geographic regions. The District has primary authority for the control of air pollution from stationary sources. Under California law, the District has the authority to sue and be sued in the name of the District in all actions and proceedings in all courts and tribunals of competent jurisdiction. Cal. Health & Safety Code § 40701.

33. Defendant GOVERNING BOARD OF THE SAN JOAQUIN VALLEY UNIFIED AIR POLLUTION CONTROL DISTRICT is the 15-member governing body of the District that is authorized to adopt the rules and regulations for the District. Cal. Health & Safety Code §§ 40600(c), 40601, 40604.

**STATUTORY FRAMEWORK**

34. The Clean Air Act establishes a partnership between EPA and the states for the attainment and maintenance of the NAAQS. *See* 42 U.S.C. §§ 7401-7515. Under the Act, EPA has set health-based standards for six pollutants, including ozone. States must adopt attainment plans that contain enforceable emissions limitations necessary to attain the NAAQS and meet applicable requirements of the Act. 42 U.S.C. §§ 7401(a)(1), (a)(2)(A); 7502(c)(6). States must submit all such plans and plan revisions to the EPA. 42 U.S.C. § 7410(a)(1). Once EPA approves plans and plan revisions, they become enforceable as a matter of federal law as part of the State Implementation Plan.

35. Attainment plans must ensure steady progress toward the goal of attaining the ozone standard by the applicable deadline. Congress called this component Reasonable Further Progress. A state must demonstrate that an attainment plan will attain the standard by the deadline and will achieve Reasonable Further Progress towards attainment by showing that the emission inventory for the area continues to decline according to milestones every three years. 42 U.S.C. § 7511a(c)(2)(B). Such demonstration must show emissions reductions of at least three percent of baseline emissions of nitrogen oxides ("NOx") or volatile organic compounds ("VOC") each year or less than three percent if a state demonstrates all feasible measures are in the plan. 42 U.S.C. §§ 7511a(c)(2)(B)(i), (ii), 7511a(c)(2)(C).

36. Attainment plans must also include contingency measures that take effect without any further action by the state upon a plan's failure to meet Reasonable Further Progress or attain the standard by the applicable date. 42 U.S.C. § 7502(c)(9). The EPA interprets this requirement so that "contingency emissions reductions should be approximately equal to the emissions reductions necessary to demonstrate [Reasonable Further Progress] for one year." 57 Fed. Reg. 13498, 13543-44 (April 16, 1992).

37. Congress established several ozone classifications for areas that fail to meet the ozone standard, or nonattainment areas. For areas classified as an extreme ozone nonattainment area, section 182(e)(5) of the Act allows states to rely on reductions from advanced technologies to attain the standard. 42 U.S.C. § 7511a(e)(5). To rely on the section 182(e)(5) advanced technologies provision, a state must make an enforceable commitment to submit contingency measures to take effect "if the anticipated technologies do not achieve planned reductions." 42 U.S.C. § 7511a(e)(5)(B).

## FACTUAL BACKGROUND

38. Ground-level ozone is formed by a reaction between nitrogen oxides ("NOx") and volatile organic compounds ("VOC") in the presence of heat and sunlight. Unlike ozone in the upper atmosphere which forms naturally and protects the Earth from ultraviolet radiation, ozone at ground level forms primarily from anthropogenic pollution.

39. Short-term exposure to ozone irritates lung tissue, decreases lung function, exacerbates respiratory disease such as asthma and Chronic Obstructive Pulmonary Disease (COPD), and increases susceptibility to respiratory infections such as pneumonia, all of which contribute to an increased likelihood of emergency department visits and hospitalizations. Short-term exposure to ozone also increases the risk of premature death, especially among older adults. Long-term exposure to ozone causes asthma in children, decreases lung function, damages the airways, leads to the development of COPD, and increases allergic responses.

40. On July 18, 1997, EPA promulgated an ozone standard of 0.08 parts per million averaged over an 8-hour period to replace the less stringent 1-hour ozone standard. 62 Fed. Reg. 38856 (July 18, 1997); 40 C.F.R. § 50.9(b) (2003).

41. On April 30, 2007, the District adopted the 2007 Ozone Plan to attain the 1997 8-hour

COMPLAINT                                                  7

ozone standard.

42. On September 27, 2007, CARB adopted the State Strategy for California's 2007 State Implementation Plan ("State Strategy").

43. In 2008, EPA completed a review of the 1997 8-hour ozone standard, found it necessary to lower the allowable ambient concentration of ozone to 0.075 parts per million, and promulgated the 2008 8-hour ozone standard. 73 Fed. Reg. 16436 (March. 27, 2008); 40 C.F.R. § 50.15. EPA revoked the 1997 standard as part of the transition to the 2008 standard, but retained the attainment contingency measures for the 1997 standard as a control to help ensure attainment of the 2008 standard. 40 C.F.R. §§ 51.1100(o)(13), 51.1105(a)(1).

44. On April 24, 2009, CARB adopted the Status Report on the State Strategy for California's 2007 State Implementation Plan (SIP) and Proposed Revision to the SIP Reflecting Implementation of the 2007 State Strategy ("Status Report").

45. Effective June 4, 2010, EPA reclassified the San Joaquin Valley to an extreme nonattainment area and established June 15, 2024 as the attainment date. 75 Fed. Reg. 24409 (May 5, 2010).

46. On July 21, 2011, CARB adopted Resolution 11-22. Resolution 11-22 includes CARB's commitment to develop, adopt, and submit by 2020 the attainment contingency measures meeting the requirements of 172(c)(9), 42 U.S.C. § 7502(c)(9), and the advanced technologies contingency measures required by section 182(e)(5) of the Act, 42 U.S.C. § 7511a(e)(5).

47. On July 21, 2011, CARB adopted the 8-Hour Ozone State Implementation Plan Revisions and Technical Revisions to the PM2.5 State Implementation Plan Transportation Conformity Budgets for the South Coast and San Joaquin Valley Air Basins ("2011 Ozone SIP Revisions"). The 2011 Ozone SIP Revision updated the baseline emissions inventory for the plan to attain the 1997 8-hour ozone standard to 565.2 tons per day of NOx and 457.5 tons per day of VOC. 76 Fed. Reg. 57846, 57858 and Table 9 (Sept. 16, 2011).

48. As required by section 172(c)(9), 42 U.S.C. § 7502(c)(9), the attainment contingency measures must provide one year of Reasonable Further Progress (3 percent of baseline emissions), which equates to 16.956 tons per day of NOx reductions and 13.725 tons per day of VOC reductions.

COMPLAINT                                    8

49. EPA proposed to approve the attainment contingency measures based on CARB's commitment to adopt attainment contingency measures and "the continuing implementation of both on- and off-road motor vehicle controls," the latter of which equates to reductions of "2 [tons per day] of NOx and less than 0.5 [tons per day] of VOC." 76 Fed. Reg. 57846, 57864 (Sept. 16, 2011).

50. EPA approved the commitment to develop, adopt, and submit by 2020 the attainment contingency measures meeting the requirements of section 172(c)(9), 42 U.S.C. § 7502(c)(9), and the advanced technologies contingency measures required by section 182(e)(5) of the Act, 42 U.S.C. § 7511a(e)(5). 77 Fed. Reg. at 12670. EPA identified the attainment contingency measures commitment and the advanced technologies contingency measures commitment in the State Implementation Plan. 40 C.F.R. § 52.220(396)(ii)(A)(*2*)(*i*).

51. On November 21, 2019, CARB adopted Resolution 19-25 and the Progress Report on San Joaquin Valley Emissions Reductions for the 0.08 Parts Per Million 8-Hour Ozone Standard ("Progress Report").

52. On December 31, 2019, CARB submitted the Progress Report to EPA as a SIP revision.

53. The Progress Report states that "NOx emissions reductions needed for attainment in 2023 can be met with defined CARB and District measures adopted since the 2007 Ozone Plan was submitted to U.S. EPA, eliminating the need to rely on advance technology measures and to provide contingency measures under section 182(e)(5)."

54. The Progress Report states that "CARB and the District recognize that attainment contingency to satisfy Act [sic] section 172(c)(9) is still required."

55. Resolution 19-25 states that "the [Progress Report] demonstrates the Section 182(e)(5) requirements of the Act no longer apply to the Valley for the 8-hour ozone NAAQS."

56. To date, EPA has neither proposed to approve nor approved the Progress Report as a SIP revision.

///

///

///

COMPLAINT 9

## FIRST CLAIM FOR RELIEF

### Violation of an Emission Standard or Limitation

### (42 U.S.C. § 7604(a)(1))

57. Valley EJ Organizations re-allege and incorporate by reference the allegations set forth in paragraphs 1-56.

58. On July 21, 2011, CARB adopted Resolution 11-22 in which CARB commits "to develop, adopt, and submit contingency measures by 2020 if advanced technology measures do not achieve planned reductions."

59. On November 18, 2011, CARB sent a letter to EPA stating that "ARB would like to clarify that the enforceable commitment made by ARB includes an enforceable commitment, in accordance with sections 172(c)(9) and 182(e)(5) of the Clean Air Act, to adopt and implement specific contingency measures to be undertaken if the South Coast or San Joaquin Valley nonattainment areas fail to attain the national 8-hour ambient air quality standard for ozone by the applicable attainment date."

60. EPA approved the commitment to develop, adopt, and submit by 2020 attainment contingency measures and identified the commitment in the State Implementation Plan: "Commitment to develop, adopt and submit by 2020 contingency measures to be implemented if advanced technology measures do not achieve the planned reductions and attainment contingency measures meeting the requirements of CAA 172(c)(9), pursuant to CAA section 182(e)(5) as given on page 4 [of Resolution 11-22]. 40 C.F.R. § 52.220(396)(ii)(A)(*2*)(*i*); 77 Fed. Reg. at 12670.

61. The commitment to develop, adopt, and submit by 2020 attainment contingency measures meeting the requirements of section 172(c)(9), 42 U.S.C. § 7502(c)(9), is an emission standard or limitation.

62. Defendants have failed to develop, adopt, and submit attainment contingency measures meeting the requirements of section 172(c)(9), 42 U.S.C. § 7502(c)(9).

63. By failing to develop, adopt, and submit attainment contingency measures meeting the requirements of section 172(c)(9), 42 U.S.C. § 7502(c)(9), Defendants have violated an emission standard or limitation within the meaning of the Act's citizen suit provision. 42 U.S.C. § 7604(a)(1).

Defendants' violation of the Act is ongoing and will continue unless remedied by this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the Court grant the following relief:

A. ISSUE preliminary and permanent injunctions directing the Defendants to develop, adopt, and submit to EPA attainment contingency measures meeting the requirements of section 172(c)(9), 42 U.S.C. § 7502(c)(9);

B. DECLARE that the Defendants have a duty to develop, adopt, and submit attainment contingency measure meeting the requirements of section 172(c)(9), 42 U.S.C. § 7502(c)(9), and have violated an emission standard or limitation by failing to develop, adopt, and submit such attainment contingency measures.

C. RETAIN jurisdiction over this matter until such time as the Defendants have complied with their duty under the Clean Air Act;

D. AWARD to Plaintiffs their costs of litigation, including reasonable attorney and expert witness fees; and

E. GRANT such additional relief as the Court may deem just and proper.

Dated: September 28, 2022

Respectfully Submitted,

LAW OFFICES OF BRENT J. NEWELL

/s/ Brent Newell

Brent J. Newell
Attorney for Plaintiffs
CENTRAL CALIFORNIA ENVIRONMENTAL JUSTICE NETWORK, COMMITTEE FOR A BETTER ARVIN, MEDICAL ADVOCATES FOR HEALTHY AIR, and HEALTHY ENVIRONMENT FOR ALL LIVES