1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  MYUNG J. PARK, State Bar No. 210866
   Supervising Deputy Attorney General
3  COREY M. MOFFAT, State Bar No. 305620
   JONATHAN A. WIENER, State Bar No. 265006
4  NATALIE COLLINS, State Bar No. 338348
   Deputy Attorney General
5    455 Golden Gate Ave, Suite 11000
     San Francisco, CA 94102-7020
6    Telephone:  (415) 510-3787
     E-mail:  Corey.Moffat@doj.ca.gov
7  *Attorneys for the State Defendants*

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 | **CENTRAL CALIFORNIA ENVIRONMENTAL** | 2:22-cv-01714-TLN-CKD |
   | **JUSTICE NETWORK, a nonprofit corporation,** | |
12 | **COMMITTEE FOR A BETTER ARVIN, a** | |
   | **nonprofit corporation, MEDICAL ADVOCATES** | |
13 | **FOR HEALTHY AIR, a nonprofit corporation, and** | **STATE DEFENDANTS'** |
   | **HEALTHY ENVIRONMENT FOR ALL LIVES, an** | **MEMORANDUM OF POINTS** |
14 | **unincorporated association,** | **AND AUTHORITIES IN** |
   | | **OPPOSITION TO PLAINTIFFS'** |
15 | Plaintiffs, | **MOTION FOR SUMMARY** |
   | | **JUDGMENT** |
16 | v. | Judge:          Honorable Troy L. |
17 | | Nunley |
18 | **LIANE RANDOLPH, in her official capacity as** | Action Filed: September 28, 2022 |
   | **Chair of the Air Resources Board, STEVEN CLIFF,** | |
19 | **in his official capacity as Executive Officer of the Air** | |
   | **Resources Board, SANDRA BERG, JOHN** | |
20 | **EISENHUT, DANIEL SPERLING, JOHN** | |
   | **BALMES, DIANE TAKVORIAN, DEAN FLOREZ,** | |
21 | **HECTOR DE LA TORRE, DAVINA HURT,** | |
   | **BARBARA RIORDAN, PHIL SERNA, NORA** | |
22 | **VARGAS, TANIA PACHECO-WERNER, and** | |
   | **GIDEON KRACOV, in their official capacities as** | |
23 | **Board Members of the Air Resources Board,** | |
   | **CONNIE LEYVA and EDUARDO GARCIA, in** | |
24 | **their official capacities as *Ex Officio* Board Members** | |
   | **of the Air Resources Board, SAN JOAQUIN** | |
25 | **VALLEY UNIFIED AIR POLLUTION CONTROL** | |
   | **DISTRICT, and the GOVERNING BOARD OF** | |
26 | **THE SAN JOAQUIN VALLEY UNIFIED AIR** | |
   | **POLLUTION CONTROL DISTRICT,** | |
27 | Defendants. | |
28

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................ 1

Statement of Issues .................................................................................................... 1

Legal Background ....................................................................................................... 2

Factual Background .................................................................................................... 4

Argument .................................................................................................................... 5

     I.     The Court Should Not Impose a Three-Percent Reduction Standard or Any Other Additional Substantive Requirements on State Defendants' Submission to EPA ..................................................................................... 5

          A.     Additional Substantive Requirements Are Unnecessary to Remedy the Alleged Violation ................................................ 5

          B.     The SIP Does Not Require the Contingency Measure(s) in Question to Reduce Emissions by Three Percent ....................... 6

          C.     A Court Order Imposing Substantive Emissions-Reduction Requirements Could Potentially Result in an Untenable Jurisdictional Conflict .................................................................. 8

     II.     The Court Should Not Require State Defendants to Adopt and Submit Contingency Measure(s) to EPA Any Faster Than 18 Months ............................. 9

          A.     The Clean Air Act Expressly Provides 18 Months for a State to Remedy a SIP Deficiency ................................................ 10

          B.     State Defendants Require 18 Months to Properly Comply with the Contingency Measure Requirement ......................................... 12

Conclusion ............................................................................................................... 14

i

State Defendants' Memorandum of Points and Authorities in Opp. to Plaintiffs' Motion for Summary Judgment
(2:22-cv-01714-TLN-CKD)

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Action for Rational Transit v. West Side Highway Project*
    699 F.2d 614 (2d Cir. 1983)................................................................................. 7

*Am. Lung Ass'n of N.J. v. Kean*
    871 F.2d 319 (3d Cir. 1989)................................................................................. 10

*Ass'n of Irritated Residents v. U.S. E.P.A.*
    10 F.4th 937 (9th Cir. 2021)................................................................................. 2

*Ass'n of Irritated Residents v. U.S. E.P.A.*
    686 F.3d 668 (9th Cir. 2012)................................................................................. 2

*Ass'n of Irritated Residents v. U.S. E.P.A.*
    No. 18-CV-01604-YGR, 2018 WL 3548885 (N.D. Cal. July 24, 2018) ............................... 12

*Bayview Hunters Point Cmty. Advocs. v. Metro. Transp. Comm'n*
    366 F.3d 692 (9th Cir. 2004)................................................................................. 7

*California ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. Hardesty Sand &
Gravel*
    No. 2:11-CV-02278 JAM, 2012 WL 639344 (E.D. Cal. Feb. 24, 2012)................................. 2

*Citizens for a Better Env't v. Deukmejian*
    731 F.Supp. 1448 (N.D. Cal. 1990) .......................................................................... 7, 9

*Citizens for Penn.'s Future v. Wheeler*
    469 F. Supp. 3d 920 (N.D. Cal. 2020) ........................................................... 10, 13, 14

*Clean Air Council v. Mallory*
    226 F.Supp.2d 705 (E.D. Penn. 2002) ....................................................................... 9

*Comm. for a Better Arvin v. U.S. E.P.A.*
    786 F.3d 1169 (9th Cir. 2015).......................................................................... 2, 4, 5, 8

*Delaney v. E.P.A.*
    898 F.2d 687 (9th Cir. 1990)................................................................................. 12

*El Comite Para El Bienestar de Earlimart v. Warmerdam*
    539 F.3d 1062 (9th Cir. 2008).......................................................................... 2, 6, 8

*Friends of the Earth v. Carey*
    535 F.2d 165 (2d Cir. 1975)................................................................................. 9

ii

State Defendants' Memorandum of Points and Authorities in Opp. to Plaintiffs' Motion for Summary Judgment
(2:22-cv-01714-TLN-CKD)

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Green v. Mansour*
   474 U.S. 64 (1985) ........................................................................................... 6

4

5

*In re Ozone Designation Litig.*
   286 F. Supp. 3d 1082 (N.D. Cal. 2018) ........................................................... 14

6

*Mont. Envt'l Info. Ctr. v. Thomas*
   902 F.3d 971 (9th Cir. 2018) ............................................................................. 2

7

8

*Natural Resources Defense Council v. Train*
   510 F.2d 692 (D.C. Cir. 1975) ..................................................................... 12, 14

9

*Sierra Club v. Gorsuch*
   551 F. Supp. 785 (N.D. Cal. 1982) .................................................................. 10

10

11

*Sierra Club v. Jackson*
   No. CIV.A. 01-1537 PLF, 2011 WL 181097 (D.D.C. Jan. 20, 2011) ................ 9

12

13

*Sierra Club v. Thomas*
   658 F. Supp. 165 (N.D. Cal. 1987) ........................................................ 10, 12, 14

14

*Sierra Club v. U.S. E.P.A.*
   671 F.3d 955 (9th Cir. 2012) .................................................................... 2, 4, 12

15

16

*Sierra Club v. U.S. E.P.A.*
   99 F.3d 1551 (10th Cir. 1996) ........................................................................... 3

17

18

*Va. Off. for Prot. & Advocacy v. Stewart*
   563 U.S. 247 (2011) .......................................................................................... 6

19

*Vigil v. Leavitt*
   381 F.3d 826 (9th Cir. 2004) ............................................................................. 2

20

21

*Wilder v. Thomas*
   854 F.2d 605 (2d Cir. 1988) ............................................................................ 12

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES
## (continued)

Page

**STATUTES**

United States Code, Title 42
§ 7401 ............................................................................................................... 2
§ 7401(a) .............................................................................................. 3, 10, 12
§ 7410(k) ........................................................................................................... 7
§ 7410(k)(1), (3) .............................................................................................. 2
§ 7410(k)(2) .................................................................................................... 11
§ 7410(k)(5) ...................................................................................................... 3
§ 7502(c)(9) ......................................................................................... 4, 5, 6, 9
§ 7509(a) ............................................................................................ 3, 10, 11, 12
§ 7509(c)(1) .................................................................................................... 11
§ 7511a(e)(5) ................................................................................................. 4, 5
§ 7607(b)(1) ...................................................................................................... 8

California Government Code
§ 11340 ............................................................................................................ 13

**OTHER AUTHORITIES**

Federal Register, Vol. 57
13498 ............................................................................................................ 3, 8
13511 .............................................................................................................. 3

Federal Register, Vol. 75
24409 .............................................................................................................. 4

Federal Register, Vol. 76
57846 ............................................................................................................ 3, 4
57847 .............................................................................................................. 4
57863 .............................................................................................................. 3
57864 .............................................................................................................. 4

Federal Register, Vol. 77
12652 .............................................................................................................. 4
12653 .............................................................................................................. 4

Federal Register, Vol. 78
37741 ............................................................................................................ 3, 8
37750 ............................................................................................................ 3, 8

iv

State Defendants' Memorandum of Points and Authorities in Opp. to Plaintiffs' Motion for Summary Judgment
(2:22-cv-01714-TLN-CKD)

# INTRODUCTION

As part of California's implementation of federal air quality standards for ground-level ozone under the Clean Air Act, the State has committed to adopt and submit certain contingency measure(s) to the U.S. Environmental Protection Agency (EPA) for its review and approval. State Defendants (those named Defendants other than the San Joaquin Valley Unified Air Pollution Control District and its governing board) have never denied that their duty to develop, adopt, and submit these contingency measure(s) exists, or that it has not yet been satisfied. Accordingly, State Defendants do not oppose a declaration from the Court to that effect. Similarly, State Defendants also do not oppose an order from the Court that they cure this deficiency by developing, adopting, and submitting the required contingency measure(s) to EPA within the statutorily delineated 18-month time period specifically designed for this purpose. Such an order would fully remedy the alleged violation without intruding on the roles that the Clean Air Act reserves for EPA and the Courts of Appeals, while also ensuring that the State Defendants have adequate time to meaningfully comply.

By contrast, Plaintiffs' requested order would do none of these things. Plaintiffs overreach when they attempt to impose a requirement that the contingency measure(s) achieve a three-percent emissions reduction that is simply not required by law and could potentially put the Court at odds with EPA, who Congress intended to make this determination. Similarly, rather than looking to the terms of the Clean Air Act, or working collaboratively to understand the time required to develop robust contingency measure(s) that would best serve the public interest, Plaintiffs seek to impose an arbitrary timeline that would significantly limit Defendants' ability to do so. For these reasons and those presented below, the Court should reject Plaintiffs' proposed order and issue an order, to the extent it deems one warranted, that is consistent with the parameters of the Clean Air Act and the *Ex Parte Young* doctrine.

# STATEMENT OF ISSUES

As noted above, State Defendants do not contest any of the three Issues identified by Plaintiffs. Plaintiffs' Memorandum in Support of Motion for Summary Judgment (Plaintiffs'

1  Memorandum) at pp. 1–2. Rather, the only disputed issue before the Court is one Plaintiffs do not

2  identify:

3      1. To the extent the Court determines judgment is warranted, what is the proper remedy?

4  **LEGAL BACKGROUND**

5      The Clean Air Act (CAA), codified at 42 U.S.C. §§ 7401, *et seq.*, "sets forth a cooperative

6  state-federal scheme for improving the nation's air quality." *Vigil v. Leavitt*, 381 F.3d 826, 830

7  (9th Cir. 2004). Under this system of cooperative federalism, EPA must "identify air pollutants

8  that endanger the public health and welfare" and set National Ambient Air Quality Standards

9  (NAAQS) that "specify the maximum allowable concentration of those pollutants in the

10  atmosphere." *Mont. Envt'l Info. Ctr. v. Thomas*, 902 F.3d 971, 974 (9th Cir. 2018). EPA

11  designates areas that fail to attain the NAAQS as "nonattainment areas." *Comm. for a Better

12  Arvin v. U.S. E.P.A.*, 786 F.3d 1169, 1173–74 (9th Cir. 2015). To address nonattainment areas,

13  States must then adopt State Implementation Plans (SIPs) that "set[] out how a nonattainment

14  area will come into compliance with the requisite NAAQS." *Sierra Club v. U.S. E.P.A.*, 671 F.3d

15  955, 958 (9th Cir. 2012). States must submit these SIPs to EPA for review and approval. *Ass'n of

16  Irritated Residents v. U.S. E.P.A.*, 686 F.3d 668, 671 (9th Cir. 2012).

17      In California, this task has been delegated to the California Air Resources Board (CARB),

18  though the State's Air Districts have primary authority over stationary and indirect sources within

19  their jurisdictions. *El Comite Para El Bienestar de Earlimart v. Warmerdam*, 539 F.3d 1062,

20  1066 (9th Cir. 2008); *California ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. Hardesty

21  Sand & Gravel*, No. 2:11-CV-02278 JAM, 2012 WL 639344, at *1 (E.D. Cal. Feb. 24, 2012).

22  Accordingly, California's SIPs generally involve Air Districts developing local measures within

23  their authority, and CARB packaging these measures alongside its own measures within its

24  authority (e.g. mobile sources) for submission to EPA. *Ass'n of Irritated Residents v. U.S. E.P.A.*,

25  10 F.4th 937, 942 (9th Cir. 2021); *Comm. for a Better Arvin*, 786 F.3d at 1174.

26      Upon submission, EPA is instructed to review the SIP to determine its completeness and

27  sufficiency. 42 U.S.C. § 7410(k)(1), (3). If EPA approves a SIP, it becomes equivalent to federal

28  law and generally enforceable as such. *Comm. for a Better Arvin*, 786 F.3d at 1174. If EPA

2

State Defendants' Memorandum of Points and Authorities in Opp. to Plaintiffs' Motion for Summary Judgment
(2:22-cv-01714-TLN-CKD)

1   determines a SIP to be incomplete or insufficient, it is instructed to notify the State and require

2   the State remedy the inadequacy, including through the implementation of "reasonable

3   deadlines." 42 U.S.C. § 7410(k)(5). One example of this process occurs when EPA determines

4   that a State has either failed to submit a required SIP component or failed to implement an already

5   approved SIP component. In such situations, the CAA ultimately instructs EPA to impose

6   sanctions on the State, but only after providing the state 18 months to correct the noted

7   deficiency. 42 U.S.C. § 7509(a). This 18 month waiting period implements the CAA's general

8   principle of cooperative federalism.  *See* 42 U.S.C. § 7401(a). "This eighteen-month 'sanctions

9   clock' is turned off if and when the deficiency is corrected, or when an area is redesignated to

10  attainment." *Sierra Club v. U.S. E.P.A.*, 99 F.3d 1551, 1555 n.5 (10th Cir. 1996).

11          To help States develop their SIPs, EPA has provided its preliminary views on how it will

12  interpret certain parts of the CAA. Accordingly, as Plaintiffs cite, EPA has previously indicated in

13  its General Preamble for the Implementation of Title I of the [CAA] Amendments of 1990

14  (General Preamble) that contingency measures should result in "additional emissions reductions

15  of up to 3 percent of the emissions in the adjusted base year inventory." 57 Fed. Reg. 13498,

16  13511 (Apr. 16, 1992); *see also* 76 Fed. Reg. 57846, 57863 (Sept. 16, 2011) (applying same

17  interpretation to the 1997 8-Hour Ozone Standard). However, EPA has also made explicit that

18  "[a]lthough the General Preamble includes various statements that States must take certain

19  actions, these statements are made pursuant to EPA's preliminary interpretations, and thus do not

20  bind the States and the public as a matter of law." 57 Fed. Reg. 13498. Accordingly, EPA has

21  consistently referred to its General Preamble as "guidance" (*see, e.g.*, 76 Fed. Reg. 57863) and

22  approved contingency measures in practice that are projected to achieve emissions reductions of

23  less than three percent of the adjusted base year inventory. *See, e.g.*, 78 Fed. Reg. 37741, 37750

24  (Jun. 24, 2013) (approving contingency measures for the 1997 PM2.5 NAAQS that were

25  expected to result in "emissions reductions amounting to less than 1 year's worth of RFP").[1]

26

27  _____

[1] EPA is also currently discussing revisions to its contingency measure guidance in light of recent
decisions by the Ninth Circuit and D.C. Circuit Courts of Appeals, and is expected to release this

28  guidance in early 2023. (Decl. of Sylvia Vanderspek, ¶ 29).

**FACTUAL BACKGROUND**

The 1997 ozone NAAQS sets a maximum level of ozone in ambient air at 0.08 ppm as measured over an eight-hour period. *See Sierra Club*, 671 F.3d at 958. The SIP addressing this standard in the San Joaquin Valley consists of the San Joaquin Valley Unified Air Pollution Control District's (District) 2007 Ozone Plan (Apr. 30, 2007) (*see* CARB Resolution 07–20 (Jun. 14, 2007)), the District's amendments to the Ozone Plan (Revised Action Summary Minutes (Dec. 18, 2008)), CARB's State Strategy (CARB Resolution 07–28 (Sept. 27, 2007)), CARB's status report on the State Strategy (CARB Resolution 09–34 (Apr. 24, 2009)), and CARB's July 2011 revisions to the Ozone SIP (CARB Resolution 11–22 (Jul. 21, 2011)). EPA proposed to approve, and ultimately approved, these five SIP submittals, which it referred to collectively as the "[SJV] 2007 8-Hour Ozone SIP," "based in part on CARB's commitment to submit by 2020 additional contingency measures meeting the requirements of [42 U.S.C. § 7502(c)(9)] and [42 U.S.C. § 7511a(e)(5)]." [2] 76 Fed. Reg. 57846, 57847, 57864 (Sept. 16, 2011); 77 Fed. Reg. 12652–53 (Mar. 1, 2012).

The groups Committee for a Better Arvin, Comite Residentes Organizados Al Servicio Del Ambiente Sano, and Associated of Irritated Residents subsequently, represented by Plaintiffs' counsel in this action, sued EPA claiming that it had erred in approving California's ozone and particulate matter SIPs. *Comm. for a Better Arvin*, 786 F.3d 1169. Among other claims, they contended that California's "commitments to propose and adopt emissions control measures and to achieve aggregate emission reductions" in the SIPs were "merely aspirational goals and . . . unenforceable." *Id.* at 1178–79. The Ninth Circuit rejected this argument, finding that because the commitments "require[d] California to meet specific reductions by specific deadlines," they were "not merely aspirational, unenforceable goals." *Id.* at 1180.

Because NOx emissions reductions needed for attainment could be "met with defined CARB and District measures adopted since the 2007 Ozone Plan was submitted to U.S. EPA,"

---

[2] Because the San Joaquin Valley was reclassified from "Serious" to "Extreme" nonattainment for the 1997 8-hour ozone NAAQS in May 2010, 42 U.S.C. § 7511a(e)(5) applies to SIPs for that area. 75 Fed. Reg. 24409 (May 5, 2010).

1    there was no longer a need to rely on advanced technology measures and the related contingency

2    measures under 42 U.S.C. § 7511a(e)(5) by November, 2019. CARB's Progress Report on San

3    Joaquin Valley Emissions Reductions for the 0.08 Parts Per Million 8-Hour Ozone Standard at p.

4    2. However, the "attainment contingency to satisfy [42 U.S.C. § 7502(c)(9)] [was] still required."

5    *Id.* at n.3. Accordingly, in March 2020, CARB moved toward a meeting with EPA and the

6    District to discuss this potentially unmet commitment. Decl. of Sylvia Vanderspek, ¶ 15.

7    However, with COVID-19 lockdowns beginning later that month, the meeting never took place

8    and CARB decided to wait for EPA to restart the conversation. *Id.* at ¶ 16. The deadline

9    ultimately passed without CARB submitting the required contingency measure(s).

10                                          **ARGUMENT**

11          State Defendants have never denied that the SJV 2007 8-Hour Ozone SIP contains a

12   commitment to adopt and submit attainment contingency measure(s) to EPA that meet the

13   requirements of 42 U.S.C. § 7502(c)(9), pursuant to 42 U.S.C. § 7511a(e)(5), or that this

14   commitment has not yet been satisfied. *See* Joint Scheduling Report at p. 2 (Dkt. No. 16).

15   Accordingly, State Defendants do not oppose a Court declaration to this effect or a Court order

16   requiring them to submit such contingency measure(s) to EPA within the congressionally

17   delineated 18-month time period designed to remedy such a SIP deficiency. However, the Court's

18   order should properly stop there and not indulge Plaintiffs' attempt to impose additional

19   requirements that: (a) the contingency measure(s) achieve emissions reductions amounting to

20   three percent of adjusted base year emissions; and (b) State Defendants adopt and submit these

21   measure(s) to EPA within 180 days. The Court should reject these unsupported proposals for the

22   following reasons.

23   I.     **THE COURT SHOULD NOT IMPOSE A THREE-PERCENT REDUCTION STANDARD OR
            ANY OTHER ADDITIONAL SUBSTANTIVE REQUIREMENTS ON STATE DEFENDANTS'**
24          **SUBMISSION TO EPA**

25          A.     **Additional Substantive Requirements Are Unnecessary to Remedy the
                   Alleged Violation**
26

27          As Plaintiffs readily acknowledge, whatever relief they can obtain from this suit is limited

28   by the scope of the *Ex Parte Young* doctrine. Plaintiffs' Memorandum at pp. 7–8. That doctrine

                                                    5

1  creates an exception to States' Eleventh Amendment immunity from federal judicial power,

2  authorizing suits against state officials only for "prospective injunctive relief to prevent a

3  continuing violation of federal law." *Green v. Mansour*, 474 U.S. 64, 68 (1985). This exception is

4  "limited to [the] precise situation" in which "a federal court commends a state official to do

5  nothing more than refrain from violating federal law." *Va. Off. for Prot. & Advocacy v. Stewart*,

6  563 U.S. 247, 255 (2011).

7         Thus, Plaintiffs are entitled only to an order that is necessary to prevent an ongoing

8  violation of federal law. And only one such ongoing violation is alleged—that State Defendants

9  have violated the SIP by not yet submitting contingency measure(s) to EPA under 42 U.S.C.

10  § 7502(c)(9). That alleged violation can be fully remedied by an order requiring State Defendants

11  to submit such measure(s), and to do so, within a specified time. The Court should not order

12  anything more.

13         **B.      The SIP Does Not Require the Contingency Measure(s) in Question to
                Reduce Emissions by Three Percent**

14

15         The prayer in Plaintiffs' Complaint tracks the language of the SIP itself and asks for

16  injunctive and declaratory relief requiring State Defendants to submit contingency measure(s) that

17  "meet" the requirements of 42 U.S.C. § 7502(c)(9), *e.g.*, requirements that the measure be in a

18  form that allows them to take effect without further action on the part of EPA or CARB.

19  Plaintiffs' Complaint at p. 11 (Dkt. No. 1). Plaintiffs' Memorandum, however, asks this Court to

20  go far beyond just enforcing the express commitment to submit compliant measure(s) by

21  additionally attempting to control the substance of those measure(s). Specifically, Plaintiffs'

22  Memorandum asks this Court to order that those contingency measure(s) reduce emissions by

23  three percent of the baseline. Plaintiffs' Memorandum at p. 20. Not only is this beyond the

24  bounds of the Complaint, but Plaintiffs never identify anything in the SIP that expressly requires

25  such a reduction, let alone anywhere else where State Defendants have expressly made such a

26  commitment. *See El Comite Para El Bienestar de Earlimart*, 539 F.3d at 1066 (noting "the heart"

27  of a case to enforce SIP commitments "is cut out" when the commitment is not part of the final

28  SIP.)

Nor is it up to this Court to decide if the SIP implies a commitment to adopt contingency measure(s) that reduce emissions by that amount. The CAA's citizen suit provision allows only for the enforcement of the express provisions of the SIP, not even requirements that "may seem to logically flow from" it. *Citizens for a Better Env't v. Deukmejian*, 731 F.Supp. 1448, 1459 (N.D. Cal. 1990); *see also Bayview Hunters Point Cmty. Advocs. v. Metro. Transp. Comm'n*, 366 F.3d 692, 701 (9th Cir. 2004) ("courts may only enforce specific SIP strategies, and may not enforce a SIP's overall objectives or aspirational goals."). Thus, for example, a district court cannot require that contingency measures be "[]adequate to attain NAAQS," when the unmet commitment to adopt contingency measures did not "expressly commit[] to sufficient contingency measures to attain NAAQS." *Citizens for a Better Env't*, 731 F.Supp. at 1459. Accordingly, while Plaintiffs may seek "relief from specific violations of existing SIPs; they may not, through a citizen suit, obtain modification of an SIP to conform with their own 'notion of proper environmental policy.'" *Wilder v. Thomas*, 854 F.2d 605, 614 (2d Cir. 1988) (citing *Action for Rational Transit v. West Side Highway Project,* 699 F.2d 614, 616 (2d Cir. 1983)).

Instead, the decision of whether contingency measures are adequate is expressly reserved to EPA in the first instance. As noted above, the CAA's detailed cooperative federalism structure provides for States to develop plans and measures, and EPA to review them to determine whether they are approvable into a SIP. 42 U.S.C. § 7410(k). Underscoring the primacy of EPA's role, Plaintiffs request an accelerated remedy for the express purpose of providing EPA with sufficient time to evaluate the sufficiency of the contingency measure(s) State Defendants ultimately submit. *See* Plaintiffs' Memorandum at pp. 19–20. That process would be largely unnecessary if this Court could separately order what the contingency measure(s) must achieve.

Though careful to avoid suggesting the approved final SIP or even the CAA require contingency measure(s) to achieve a three-percent reduction of baseline emissions, Plaintiffs point to EPA's discussion in the preamble to EPA's *proposal* to approve California's SIP, and to EPA's non-binding guidance from the early 1990s, suggesting that they support the position that contingency measures should reduce emissions by three percent. Plaintiffs' Memorandum at pp. 16, 20. Both are misplaced. The Ninth Circuit has already rejected an attempt to locate

1    enforceable commitments in the preamble to a proposed SIP approval. *El Comite Para El*

2    *Bienestar de Earlimart*, 539 F.3d at 1071 ("El Comité's reliance on the non-final rule ignores the

3    bedrock principle that we look to the plain meaning of the final rule as promulgated."). EPA's

4    guidance is likewise not a requirement. 57 Fed. Reg. 13498. ("these statements are made pursuant

5    to EPA's preliminary interpretations, and thus do not bind the States and the public as a matter of

6    law.") Nor does the fact that EPA has previously found that level of reduction sufficient convert it

7    into a necessary condition for approval. Indeed, the agency has at times approved measures that

8    provide far less.[3] *See, e.g.*, 78 Fed. Reg. 37741, 37750 (approving contingency measures for the

9    1997 PM2.5 NAAQS that were expected to result in "emissions reductions amounting to less than

10   1 year's worth of RFP").

11           **C.    A Court Order Imposing Substantive Emissions-Reduction Requirements
                    Could Potentially Result in an Untenable Jurisdictional Conflict**

12

13           Once EPA approves or disapproves the contingency measure(s) State Defendants

14   ultimately submit, its decision will be subject to challenge directly in the Ninth Circuit Court of

15   Appeals. *See* 42 U.S.C. § 7607(b)(1) (petitions for review of EPA SIP decisions "may be filed

16   only in the United State Court of Appeals for the appropriate circuit"). If those measure(s) do not

17   achieve a certain amount of emissions reductions, any party will be free to argue—first to EPA,

18   and then to the Ninth Circuit—that the CAA does or does not require such a reduction.  But, if

19   this Court were to issue an order governing the amount of reductions the contingency measure(s)

20   must achieve, it may simultaneously face the very same question. For example, if Plaintiffs think

21   the contingency measure(s) ultimately submitted do not provide sufficient emissions reductions,

22   they could bring a motion to enforce the order, perhaps even seek contempt sanctions. That

23   possibility would exist even if EPA were to disagree and approve the measure(s). Thus, State

24   Defendants could find themselves facing contempt sanctions from this Court for submitting

25   measure(s) that EPA approved into federal law. Similarly, Plaintiffs could challenge State

26   _____
     [3] Plaintiffs also overstate the Ninth Circuit's decision in *Committee for a Better Arvin*, 786 F.3d

27   1169 (9th Cir. 2015). *See* Plaintiffs' Memorandum at p. 16. That case characterized State
     Defendants' enforceable commitment as the adoption of contingency measures that would help

28   achieve aggregate emissions reductions of a specific amount. 786 F.3d at 1180. It did not adopt or
     otherwise imply a three-percent requirement for those contingency measures.

Defendants' compliance with the order and in a separate petition for review challenge EPA's action on State Defendants' submission. Unlikely or not, these untenable situations highlight the impropriety of Plaintiffs' request that this Court set the amount of reductions to be achieved from the contingency measure(s).[4]

For similar reasons, courts have consistently rejected attempts to threaten States with contempt for failing to make substantively adequate efforts to attain the NAAQS. *See Citizens for a Better Env't*, 731 F.Supp. at 1459; *Sierra Club v. Jackson*, No. CIV.A. 01-1537 PLF, 2011 WL 181097, at *7 (D.D.C. Jan. 20, 2011) (explaining that since a district court may not embroil itself in an assessment of the substance of EPA's implementation of the CAA, which is expressly reserved for appropriate court of appeals, it must instead "give deference to EPA's ultimate conclusion on the substantive merit of its rules.") The few successful SIP enforcement cases against state officials Plaintiffs cite accord with this approach by merely ordering implementation of specific programs already identified in an approved SIP. *See Clean Air Council v. Mallory*, 226 F.Supp.2d 705 (E.D. Penn. 2002); *Friends of the Earth v. Carey*, 535 F.2d 165 (2d Cir. 1975). Indeed, State Defendants have been unable to identify a single case under the CAA in which a district court issued an injunction like the one Plaintiffs request that governs the content of a State's future submission to EPA. The Court should not make this case the first.

## II.   THE COURT SHOULD NOT REQUIRE STATE DEFENDANTS TO ADOPT AND SUBMIT CONTINGENCY MEASURE(S) TO EPA ANY FASTER THAN 18 MONTHS

Plaintiffs ask the Court to order Defendants to "develop, adopt, and submit the attainment contingency measures within 180 days." Plaintiffs' Memorandum at p. 19. Such an expedited timeline is inconsistent with the structure of the CAA, infeasible for State Defendants to comply with, and if enforced would undermine the public interest by constraining State Defendants'

---

[4] An order merely requiring State Defendants to fulfill the commitment to submit contingency measure(s) that "comply with the requirements" of 42 U.S.C. § 7502(c)(9) does not present the same degree of complications. That is what the SIP expressly requires, and thus would not be improper for the Court to include in its order. The Court will not have to decide what those precise requirements are and whether State Defendants have met them (questions reserved for EPA and the Ninth Circuit), but can instead—if necessary—rely on EPA and Ninth Circuit decisions and determine State Defendants have made appropriate efforts to comply with that term of the order.

1  ability to ensure the contingency measure(s) it submits to EPA are as effective as possible. Since

2  an order mandating such a timeline is therefore at odds with Congressional intent and case law

3  balancing such equitable factors, the Court should instead rely upon the express provisions of the

4  CAA and a reasonable estimate by CARB's Chief of the Air Quality Planning Branch to order

5  that State Defendants develop, adopt and submit contingency measure(s) to EPA within 18

6  months.

7  **A.   The Clean Air Act Expressly Provides 18 Months for a State to Remedy a
      SIP Deficiency**

8

9        When a State has not complied with a SIP requirement by the relevant deadline, the

10  district court is "presented with the task of revising the schedule, consonant with the purpose of

11  the [CAA], to ensure that [the state] [comes] into compliance . . . 'as expeditiously as

12  practicable.'" *Am. Lung Ass'n of N.J. v. Kean*, 871 F.2d 319, 327 (3d Cir. 1989) (quoting 42

13  U.S.C. § 7502(a)). However, the Court's discretion in fashioning such an equitable remedy is

14  limited by "Congress's determination that the issuance of regulations should occur within a

15  particular period of time." *Sierra Club v. Thomas*, 658 F. Supp. 165, 171 (N.D. Cal. 1987). Thus,

16  "[i]f, for example, the Act requires EPA to adopt regulations within 180 days of a particular date

17  and that deadline passes without EPA taking any action, the court, in the absence of a showing of

18  impossibility, will order EPA to issue regulations in 180 days." *Id.* (citing *Sierra Club v.*

19  *Gorsuch*, 551 F. Supp. 785 (N.D. Cal. 1982)). Here, Congress has dictated that if a State either

20  fails "to submit 1 or more of the elements (as determined by the Administrator) required by [the

21  CAA]" or fails to implement "any requirement of an approved [SIP] (or approved part of a

22  [SIP])," the State shall have "18 months after the finding, disapproval, or determination" to

23  remedy the failure before the implementation of any sanctions. 42 U.S.C. § 7509(a). This 18

24  month waiting period implements the CAA's general principle of cooperative federalism by

25  allowing time for the State to work with EPA to remedy the deficiency. *See* 42 U.S.C. § 7401(a).

26  Therefore, out of "[r]espect for congressional prerogatives," *Citizens for Penn.'s Future v.*

27  *Wheeler*, 469 F. Supp. 920, 932 (N.D. Cal. 2020), the proper remedy here is an order that State

28

10

State Defendants' Memorandum of Points and Authorities in Opp. to Plaintiffs' Motion for Summary Judgment
(2:22-cv-01714-TLN-CKD)

1    Defendants remedy the deficiency in their SIP submission by adopting and submitting the

2    required contingency measure(s) within 18 months.

3          Plaintiffs essentially argue that the Court should ignore this structure of the CAA in order

4    to allow EPA "adequate time" to review the proposed contingency measure(s) before the SIP's

5    June 15, 2024, attainment deadline. Plaintiffs' Memorandum at pp. 19–20. In support, Plaintiffs

6    cite 42 U.S.C. § 7410(k)(2), which orders EPA to either approve or disprove a State's SIP

7    submission "within 12 months" of determining it to be a complete submission. However, nothing

8    in 42 U.S.C. § 7410(k)(2), nor elsewhere in the CAA, requires EPA to take the entire 12-month

9    time period. In fact, the whole purpose of the 18-month waiting period under 42 U.S.C. § 7509(a)

10   is to allow the parties to work out their differences so that the state's remedial submission is

11   ultimately approvable by EPA. Further, the CAA actually provides an *additional* period of up to 6

12   months after the attainment deadline for EPA to determine whether attainment was actually met,

13   thereby potentially triggering the containment measure(s). 42 U.S.C.A. § 7509(c)(1). Finally, as

14   detailed below, the public interest in allowing State Defendants the full 18-month statutory

15   window to develop and implement robust contingency measure(s) should not be abridged by

16   Plaintiffs' delay in bringing this lawsuit in the first place.

17         Plaintiffs may additionally argue on reply that 42 U.S.C. § 7509(a) is irrelevant to this

18   Court's analysis since the 18-month timeline is only triggered if EPA makes a "finding,

19   disapproval, or determination" delineated by statute, and State Defendants' failure to comply with

20   such a timeline could potentially result in different sanctions than what this Court may order.

21   However, such an argument only highlights the difficulty that could arise if this Court orders

22   State Defendants to adopt and submit contingency measure(s) more quickly than 18 months.

23   Under its regulatory authority, EPA may find at any time that State Defendants failed to comply

24   with the SJV 2007 8-Hour Ozone SIP by not submitting the required contingency measure(s) by

25   2020. 42 U.S.C. § 7509 (a). If EPA were to make such a finding, it would be obligated under the

26   CAA to provide State Defendants 18 months to remedy this failure. *Id.* Therefore, an order from

27   the Court directing State Defendants to adopt and submit contingency measure(s) in a shorter

28   time frame would effectively abrogate the CAA's 18–month cure period, and provide an end-run

11

around congressional intent to foster "cooperative Federal, State, regional, and local programs to prevent and control air pollution." 42 U.S.C. § 7401(a). This would be improper since "[w]hen Congress has explicitly set an absolute deadline, congressional intent is clear." *Delaney v. E.P.A.*, 898 F.2d 687, 691 (9th Cir. 1990) (applying same analysis to congressionally designed "fall back extension"); *Sierra Club*, 671 F.3d at 960 (recognizing that 42 U.S.C. § 7509(a) effectively provides states "an 18–month extension in which it was required to revise the SIP").

**B.      State Defendants Require 18 Months to Properly Comply with the Contingency Measure Requirement**

Furthermore, even if Congress had not prescribed 18 months as the appropriate time period for State Defendants to remedy their failure to submit the required contingency measure(s), such a period would nevertheless be appropriate based upon an equitable balance of the relevant factors. The "leading case on the subject of agency failure to meet statutory deadlines" is *Natural Resources Defense Council v. Train*, 510 F.2d 692 (D.C. Cir. 1975). *Thomas*, 658 F.Supp. at 170; *see also Ass'n of Irritated Residents v. U.S. E.P.A.*, No. 18-CV-01604-YGR, 2018 WL 3548885, at *1 (N.D. Cal. July 24, 2018) (similarly applying *Train*). In *Train*, the plaintiffs brought suit to compel EPA to issue effluent limitation guidelines under the Clean Water Act. *Train*, 510 F.2d at 695. Although the statutory one-year deadline had already passed, the court re-applied the one-year deadline prospectively, and supplemented its holding by noting that, even where there is a statutorily prescribed deadline, "courts cannot responsibly mandate flat guideline deadlines when the Administrator demonstrates that additional time is necessary to insure that the guidelines are rooted in an understanding of the relative merits of available control technologies." *Id.* at 712. To help guide lower courts in applying this standard, the court then identified two types of constraints that might properly delay an agency's promulgation of statutorily mandated regulations: (1) "budgetary commitments and manpower demands… [that] are beyond the agency's capacity or would unduly jeopardize the implementation of other essential programs"; and (2) the inability to "conduct sufficient evaluation of available control technology to determine which is the best practicable [solution for a particular harm]." *Id.* Here, even putting aside the CAA's express provision of 18 months to

1  remedy a SIP deficiency, both *Train* factors also weigh in favor of allowing State Defendants 18

2  months to adopt and submit the required contingency measure(s).

3         First, budgetary commitments and manpower demands, as well as the explicit

4  requirements of the California Administrative Procedure Act, Cal. Gov. Code § 11340 *et seq.,*

5  make it infeasible for State Defendants to develop, adopt, and submit effective contingency

6  measure(s) to EPA any quicker than 18 months. As documented in the supporting declaration of

7  CARB's Chief of the Air Quality Planning Branch, measures such as these take on average 13–16

8  months from inception to effective date. Decl. of Sylvia Vanderspek, ¶¶ 17–23; *see also Citizens*

9  *for Penn.'s Future*, 469 F. Supp. 3d at 933 ("The remedial question, notwithstanding the

10  'impossibility' label, is really about feasibility given the agency's existing constraints"). This

11  estimate includes the time required to develop a proposal, workshop that proposal, draft the initial

12  Board regulation package, draft the final Board regulation package, seek final Office of

13  Administrative Law approval, and wait for the regulation to become effective per SB 1099.[5] Decl.

14  of Sylvia Vanderspek, ¶ 21. Additionally, while State Defendants are already aggressively

15  working internally to identify potentially feasible contingency measure(s), they cannot reasonably

16  begin the formal rulemaking process until EPA issues its pending contingency measure guidance,

17  since doing so would unjustifiably commit agency resources to contingency measure(s) that EPA

18  might not ultimately find approvable. *Id.* at ¶¶ 16, 21. EPA has indicated it will release its new

19  contingency measure guidance for public comment in early 2023. *Id.* at ¶ 29. Since EPA will

20  reasonably take approximately 5–6 months to finalize it after that, State Defendants cannot

21  realistically plan to develop, approve, and submit the required contingency measure(s) back to

22  EPA in less than 18 months. *Id.* at ¶ 23. Additionally, because this would all need to occur

23  alongside CARB's other extensive regulatory obligations and management of essential programs,

24  State Defendants do not have the manpower or budgetary flexibility to expedite this process

25

26  [5] Pursuant to SB 1099, regulations may only become effective on a quarterly basis. Thus, regulations become effective: January 1, if the package is filed between September 1 and November 30 inclusive; April 1, if the package is filed between December 1 and February 29 inclusive; July 1 if the package is filed between March 1 and May 31 inclusive; and October 1 if the package is filed between June 1 and August 31 inclusive.

27

28

1  significantly. *Id.* at ¶ 24*; see also In re Ozone Designation Litig.*, 286 F. Supp. 3d 1082, 1087–88

2  (N.D. Cal. 2018) (summarizing case law in which courts "recognize pragmatic considerations in

3  tailoring the appropriate remedy for non-compliance" and therefore decline proposed timelines

4  that were "simply too compressed" to afford a "reasonable possibility of compliance").

5        Second, if State Defendants were ordered to adopt and submit contingency measure(s) to

6  EPA on a more expedited timeline, they would be unable to evaluate a full array of regulatory

7  options–such as formal rulemakings–and would be instead forced to act within their existing

8  statutory authority, which would almost certainly result in less substantial emissions reductions.

9  Decl. of Sylvia Vanderspek, ¶¶ 17–23. As such, these options would provide less public benefit

10  and would be less likely to satisfy EPA's guidance on what constitutes appropriate contingency

11  measures under the CAA. In similar situations, courts have generally afforded agencies additional

12  time to develop a substantively "adequate" or "workable" solutions. *See, e.g.*, *Thomas*, 658 F.

13  Supp. at 175 ("Nevertheless, since the purpose of this order is to protect the public interest and

14  not to punish EPA, the Court would extend EPA's time to compensate for its footdragging if it

15  were convinced that doing so was necessary for the promulgation of workable regulations.");

16  *Train,* 510 F.2d at 712 (describing the necessary "formulation of adequate guidelines"); *Citizens*

17  *for Penn.'s Future*, 469 F. Supp. 3d at 933 (noting that "a lengthier schedule 'may well ensure

18  earlier, not later, implementation of any eventual regulatory scheme,' because a hasty rulemaking

19  process risks 'later judicial invalidation and remand to the agency'"). The Court should do the

20  same here.

21                                      **CONCLUSION**

22        For the foregoing reasons, insofar as the Court determines that the State Defendants have

23  failed to fulfil their obligation in the SJV 2007 8-Hour Ozone SIP to adopt and submit attainment

24  contingency measure(s) to EPA, the Court should order State Defendants to remedy this

25  deficiency in the next 18 months as expressly provided for in the Clean Air Act.

26  ///

27  ///

28  ///

14

State Defendants' Memorandum of Points and Authorities in Opp. to Plaintiffs' Motion for Summary Judgment
(2:22-cv-01714-TLN-CKD)

Dated:  January 9, 2023

Respectfully submitted,

ROB BONTA
Attorney General of California
MYUNG J. PARK
Supervising Deputy Attorney General

/s/ Corey M. Moffat

COREY M. MOFFAT
Deputy Attorney General
*Attorneys for State Defendants*

State Defendants' Memorandum of Points and Authorities in Opp. to Plaintiffs' Motion for Summary Judgment
(2:22-cv-01714-TLN-CKD)

# CERTIFICATE OF SERVICE

Case Name: **Central California Environmental Justice Network, et al. v. Liane Randolph, et al.**

No. **2:22-CV-01714**

I hereby certify that on <u>January 9, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**STATE DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**DECLARATION OF SYLVIA VANDERSPEK IN SUPPORT OF STATE DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**STATE DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>January 9, 2023</u>, at San Francisco, California.

| Corey Moffat | /s/ Corey Moffat |
|:---:|:---:|
| Declarant | Signature |

SF2022401915