BRENT J. NEWELL (State Bar No. 210312)
LAW OFFICES OF BRENT J. NEWELL
245 Kentucky Street, Suite A4
Petaluma, CA 94952
Tel: (661) 586-3724
brentjnewell@outlook.com

Attorney for Plaintiffs
Central California Environmental
Justice Network, Committee for a Better Arvin,
Medical Advocates for Healthy Air, and
Healthy Environment for All Lives

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

# SACRAMENTO DIVISION

| | |
|---|---|
| CENTRAL CALIFORNIA ENVIRONMENTAL JUSTICE NETWORK, a nonprofit corporation, COMMITTEE FOR A BETTER ARVIN, a nonprofit corporation, MEDICAL ADVOCATES FOR HEALTHY AIR, a nonprofit corporation, and HEALTHY ENVIRONMENT FOR ALL LIVES, an unincorporated association,<br><br>       Plaintiffs,<br><br>   v.<br><br>LIANE RANDOLPH, in her official capacity as Chair of the Air Resources Board, STEVEN CLIFF, in his official capacity as Executive Officer of the Air Resources Board, SANDRA BERG, JOHN EISENHUT, DANIEL SPERLING, JOHN BALMES, DIANE TAKVORIAN, DEAN FLOREZ, HECTOR DE LA TORRE, DAVINA HURT, BARBARA RIORDAN, PHIL SERNA, NORA VARGAS, TANIA PACHECO-WERNER, and GIDEON KRACOV, in their official capacities as Board Members of the Air Resources Board, CONNIE LEYVA and EDUARDO GARCIA, in their official capacities as *Ex Officio* Board Members of the Air Resources Board, SAN JOAQUIN VALLEY UNIFIED AIR POLLUTION CONTROL DISTRICT, and the GOVERNING BOARD OF THE SAN JOAQUIN VALLEY UNIFIED AIR POLLUTION CONTROL DISTRICT,<br><br>       Defendants. | Case No. 2:22-cv-01714-TLN-CKD<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

# INTRODUCTION

Defendants concede liability and the propriety of declaratory and injunctive relief. *See* State Defendants' Opposition at 1 (Dkt. No. 21) (hereafter "Opp."); District Defendants' Joinder (Dkt. No. 22). Defendants' argument against an order requiring compliance with the three percent mandate in the State Implementation Plan ("SIP") misstates the meaning of the SIP commitment, incorrectly elevates EPA's role to review SIPs over citizen enforcement, and does not substantiate limiting this Court's jurisdiction pursuant to the citizen suit provision and the *Ex Parte Young* doctrine. This Court should not accept Defendants' proposed 18-month period to adopt and submit the contingency measures because Congress wanted the measures ready for implementation without further action by EPA and because claimed equitable factors do not warrant abrogating section 172(c)(9), 42 U.S.C. § 7502(c)(9).

# ARGUMENT

## I. Injunctive Relief should Ensure Compliance with the Three Percent Standard.

### A. The requirements of section 172(c)(9) include the three percent standard.

Defendants overlook the EPA-approved commitment's language to adopt measures "meeting the requirements of CAA 172(c)(9)" and what those requirements necessarily entail. *Compare* Opp. at 6:15-21 *with* 40 C.F.R. § 52.220(396)(ii)(A)(*2*)(*i*). Failing to acknowledge or reconcile Ninth Circuit authority on SIP interpretation, Defendants instead erroneously rely on authority for deciding whether EPA approved a commitment in the first instance. Opp. at 6:15-28; 7:23 to 8:3.

Courts interpret SIPs "based on their plain meaning when such a meaning is apparent, not absurd, and not contradicted by the manifest intent of EPA, as expressed in the promulgating documents available to the public." *Safe Air for Everyone v. U.S. E.P.A.*, 488 F.3d 1088, 1100 (9th Cir. 2007). When a SIP is ambiguous, courts "defer to EPA's interpretation if it is reasonable." *El Comité para el Bienestar de Earlimart v. U.S. E.P.A.*, 786 F.3d 688, 696 (9th Cir. 2015). Furthermore, this Court interprets the SIP "in light of the overall statutory and regulatory scheme." *Id*. at 696-697 (quoting *Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*, 366 F.3d 692, 701 (9th Cir. 2004)).

Defendants rely on inapposite authority concerning whether EPA has approved a commitment as part the SIP. Opp. at 6:23-26, 7:23-8:3 (citing *El Comité para el Bienestar de Earlimart v. Warmerdam*, 539 F.3d 1062, 1066 (9th Cir. 2008)). In *Warmerdam*, the plaintiffs filed a citizen suit alleging a

violation of a commitment to adopt regulations by 1997 to reduce volatile organic compounds – an ozone precursor – from pesticides by 20 percent from 1990 levels by 2005. *Warmerdam*, 539 F.3d at 1067-1068. While EPA's notice of proposed rulemaking stated an administrative intent to approve the commitment in the "Wells Memorandum," the actual language of the SIP lacked any reference to the Memorandum. *Id*. at 1070. The plaintiffs argued that *Safe Air* controlled the issue when EPA's administrative intent contradicted the plain meaning of the SIP. *Id*. at 1071-1072. The Ninth Circuit instead held that the plaintiffs could not enforce the commitment when the codified SIP at 40 C.F.R. § 52.220 lacked the Wells Memorandum. *Id*. at 1070. The court in *Warmerdam* distinguished *Safe Air* as authority for the "interpretation of a SIP whose contents were already established." *Id*. at 1072.

Here, Defendants do not dispute whether the content of the EPA-approved SIP includes Resolution 11-22, the way EPA described the commitment in the codified SIP, or CARB's affirmation that EPA correctly interpreted Resolution 11-22. EPA approved and codified Resolution 11-22 and described the commitment "to develop, adopt and submit by 2020 . . . attainment contingency measures meeting the requirements of CAA 172(c)(9)." 40 C.F.R. § 52.220(396)(ii)(A)(*2*)(*i*); 77 Fed. Reg. at 12672 (final rule codifying the commitment in the SIP). Unlike *Warmerdam*, EPA did approve the commitment at issue here as part of the SIP, identified it in the Code of Federal Regulations, and the Court should thus interpret the meaning of "meeting the requirements of CAA 172(c)(9)" to include the three percent mandate pursuant to *Safe Air*, or if the commitment is ambiguous, as *El Comité* directs.

At bottom, Defendants incorrectly contend that "meeting the requirements of CAA 172(c)(9)" does not include a reduction requirement. Opp. at 6:15-28. However, the commitment broadly includes applicable contingency measure requirements, which EPA interpreted in the notice of proposed rulemaking made available to the public. In that notice, EPA interpreted the Act's contingency measure requirements to include, *inter alia*, that the quantity of reductions should equate to three percent of the adjusted base year emissions. "The guidance indicates that states should adopt and submit contingency measures sufficient to provide a 3 percent emissions reduction from the adjusted [Reasonable Further Progress] base year." 76 Fed. Reg. at 57864. EPA then explained that "CARB has submitted an enforceable commitment to submit, no later than 2020, additional contingency measures under CAA section 182(e)(5) that *meet the requirements for attainment contingency measures* in CAA section 172(c)(9)." 76

1  Fed. Reg. at 57864 (emphasis added). EPA finalized the approval without altering its interpretation. 77
2  Fed. Reg. at 12670; *see also* Opening Br. at 14:17 to 15:8; 17:15 to 19:5 and n.3; 20:8-9 (Dkt. No. 17-1).

3  Defendants cannot reconcile their position with EPA's approval of the Reasonable Further
4  Progress contingency measures applying the same interpretation in the same rulemaking. Reasonable
5  Further Progress contingency measures serve as a back-stop if the attainment plan does not make steady
6  progress towards attainment, while attainment contingency measures take effect upon a failure to attain a
7  National Ambient Air Quality Standard ("NAAQS"). *See* Opening Br. at 3:17 to 4:18 (explaining RFP,
8  contingency measures, and the interrelated three percent RFP standard forming the basis of EPA's
9  interpretation). In EPA's approval of the 2007 Ozone Plan, CARB submitted and EPA approved RFP
10 contingency measures as meeting the three percent standard. 76 Fed. Reg. at 57864; 77 Fed. Reg. at 12670
11 (Final Action #6). This Court should not interpret the SIP to impose different contingency measure
12 reduction standards when EPA did not.

13  Defendants criticize an interpretation of the SIP based on the notice of proposed rulemaking (the
14 proposed rule) as if it lacks legitimacy, Opp. Br. at 7:23-27, but such notices form the basis of SIP
15 interpretation pursuant to *Safe Air* or *El Comité*. *See* Section I.A, *supra.* And Defendants do not contest
16 EPA's interpretation of the requirements for contingency measures as inconsistent with the Act,
17 unreasonable, or otherwise argue that some other standard applies. Defendants only contend that a lesser
18 standard could apply because EPA had approved an unrelated attainment plan with contingency measures
19 achieving less than three percent. Opp. at 8:7-10 (citing 78 Fed. Reg. 37741 (June 24, 2013)). EPA
20 approved those contingency measures despite them achieving approximately half of the 3 percent
21 standard because data showed that the South Coast was already attaining one of the NAAQS and "may
22 also attain" the other standard. *Id*. at 37750. Given the probability of attainment, EPA found the lesser
23 quantity of reductions appropriate. *Id*. Here, EPA neither proposed nor finalized any such finding that an
24 amount less than 3 percent met the requirements of section 172(c)(9). 76 Fed. Reg. at 57863-57864.
25 Instead, EPA described the applicable requirements of section 172(c)(9) – including the three percent
26 requirement – and approved the RFP contingency measures and the commitment to adopt attainment
27 contingency measures consistent with those requirements. *Id*.; 77 Fed. Reg. at 12670.

28  Unable to offer a plausible alternative to three percent as an applicable requirement, Defendants

resort to arguing, contrary to *Safe Air* and *El Comité*, that this Court should not decide what the SIP means. Opp. Br. at 7:1-2. This misplaced argument reframes this citizen suit as one attempting to enforce the goals of the SIP or the NAAQS itself.

*Citizens for a Better Environment v. Deukmejian* has no relevance here because the plaintiffs in that case argued that the contingency measures were inadequate to attain the NAAQS and that the court should order the contingency measures to reduce emissions sufficient to attain the NAAQS. 731 F.Supp. 1448, 1459 (N.D. Cal. 1990). The district court held that it was "not at liberty to extrapolate from the plan" a commitment to attain the NAAQS through contingency measures when the plan did not include such a commitment. *Id*. Here, Valley EJ Organizations do not argue that the contingency measures should attain the 1997 8-hour ozone NAAQS. Rather, the commitment includes the essential language "meeting the requirements of CAA 172(c)(9)." 40 C.F.R. § 52.220(396)(ii)(A)(*2*)(*i*). And EPA specifically discussed and interpreted those requirements in the rulemaking approving that strategy.

*Bayview* likewise stands for the principle that plaintiffs in Clean Air Act citizen suits cannot enforce a SIP's aspirational goals. 366 F.3d at 701. *Wilder v. Thomas* similarly precludes citizen suit enforcement of the NAAQS itself. 854 F.2d 605, 614-615 (2d Cir. 1988). Here, Valley EJ Organizations allege a violation of an emission standard or limitation and an enforceable SIP strategy. Defendants do not contest whether Valley EJ Organizations may enforce the commitment as an emission standard or limitation or a SIP strategy. Rather, they incorrectly contend that the commitment lacks any substantive requirement to achieve reductions equating to three percent of the adjusted base year emissions. This Court should reject Defendants' arguments and interpret the SIP as including the three percent mandate.

        B.      EPA's role to review SIPs does not preclude appropriate injunctive relief.

Defendants next contend that the issue of "whether the contingency measures are adequate is expressly reserved to EPA in the first instance." Opp. at 7:15-22 (citing 42 U.S.C. § 7410(k)). But this argument fails to acknowledge that EPA already reviewed and approved the 2007 Ozone Plan, including the plan's RFP contingency measures and the commitment at issue here. 77 Fed. Reg. at 12670 (Final Action #6). EPA's approval of the contingency measures relied in part on CARB's commitment to develop, adopt, and submit by 2020 attainment contingency measures meeting the requirements of section 172(c)(9). *Id*. (Final Action #5). Once approved by EPA as part of the SIP, the commitment

became federal law enforceable by citizens. *Committee for a Better Arvin v. U.S. E.P.A.*, 786 F.3d 1169, 1179, 1182 (9th Cir. 2015). And this Court has jurisdiction pursuant to the citizen suit provision to enforce the commitment as an emission standard or limitation and a SIP strategy. Once EPA approves the SIP commitment, as it did here, a state is relegated to the lone option of compliance unless and until EPA approves a revision. *Safe Air*, 488 F.3d at 1097; *Friends of the Earth v. Carey,* 535 F.2d 165, 178 (2nd Cir. 1976). CARB has not submitted, nor has EPA approved, any revision altering the commitment. EPA's role, already performed, thus does not impede this Court's enforcement of that commitment.

Defendants attempt to distinguish the holdings in *Committee for a Better Arvin*, Opp. at 8 n.3, but cannot refute citizen enforcement or the enforceability of CARB's commitments to adopt measures. The Ninth Circuit decided those issues "in the context of a cooperative federalism regime in which the federal agency sets required air quality standards but the state is a primary actor in creating plans to achieve them, followed by potential enforcement at both state and federal levels *and by private citizens*." *Committee for a Better Arvin*, 786 F.3d at 1173 (emphasis added). The court held that the commitments to adopt unspecified measures were enforceable strategies and not unenforceable goals because "the commitments in both Plans require California to meet specific reductions by specific deadlines." *Id*. at 1180. The Ninth Circuit then considered the related issue of whether citizens could, as a practical matter, enforce the commitments. *Id*. at 1180-1182. "We also conclude that Petitioners can seek timely remedies under the [Clean Air Act] if California does not fulfill a commitment to propose and adopt emission control measures or to achieve aggregate emission reductions." *Id*. at 1182 (noting that the citizen suit provision provides remedies for violations of an emission standard or limitation). Defendants have cited no authority that would refute or otherwise negate *Committee for a Better Arvin* or elevate EPA's role reviewing SIPs over citizen enforcement.

Defendants mistakenly predict a jurisdictional crisis if injunctive relief directs Defendants to ensure the contingency measures achieve reductions of three percent of base year emissions. Opp. at 8:13 to 9:4. This Court, exercising its jurisdiction to enforce the EPA-approved SIP, will not interfere with EPA's role approving any submission, or judicial review thereof. Simply put, the EPA-approved SIP controls unless and until California submits and EPA approves a SIP revision. *Safe Air*, 488 F.3d at 1097.

In *Safe Air*, the court interpreted the Idaho SIP as it relates to open-field burning in the context of a

proposed SIP revision that allowed open-field burning. *Safe Air*, 488 F.3d at 1091. The Ninth Circuit first discussed how the Clean Air Act allows states to submit changes to the SIP and how the anti-backsliding provision, 42 U.S.C. § 7410(l), cabins EPA's authority to approve such revisions. *Id*. at 1092-1093. The court then interpreted the Idaho SIP applying the principles set forth in Section I.A, *supra*, and held that the EPA-approved SIP prohibited open-field burning. *Id*. at 1100. Applying *Safe Air* here, once EPA approved the commitment to adopt attainment contingency measures, that commitment became federal law. *Id*. at 1100. Unless and until EPA-approves a revision to the commitment as compliant with the Act, including the anti-backsliding provision, then the EPA-approved version of the commitment controls. *Id*. at 1101; *see also Friends of the Earth*, 535 F.2d at 169 (a SIP "once adopted by a state and approved by the EPA, becomes controlling and must be carried out by the state.").

Because CARB has not submitted a proposed revision, the SIP remains the same as it did when EPA approved the commitment over ten years ago. If and when CARB submits a proposed revision, and EPA acts on any submission pursuant to section 110 of the Act, 42 U.S.C. § 7410, then judicial review of that SIP approval may commence. Unless and until EPA approves a revision to the SIP, the commitment as approved ten years ago controls and neither EPA's section 110 authority nor judicial review of an EPA action that may never occur should not supplant this Court's jurisdiction to enforce the commitment.

        C.    *Ex Parte Young* allows for specific prospective injunctive relief.

Defendants assert incorrectly that the *Ex Parte Young* doctrine does not authorize this Court to order the contingency measures to achieve a specific amount of reductions. Opp. at 5:27 to 6:12. To the contrary, *Ex Parte Young* does not stop at prospective injunctive relief to merely compel some action, the contours of which could continue to violate federal law. Rather, it extends to compelling action that complies with federal environmental statutes, including the Clean Air Act. *Clean Air Council v. Mallory*, 226 F.Supp.2d 705, 725 (E.D. Penn. 2002) (applying *Ex Parte Young* to authorize injunctive relief to "fully implement . . . the final motor vehicle exhaust emission standards required by the Pennsylvania approved SIP"); *Natural Resources Defense Council v. California Dept. of Transp.*, 96 F.3d 420, 424 (9th Cir. 1996). Defendants later acknowledge that *Mallory* represents a "successful SIP enforcement case[] . . . by ordering implementation of specific programs already identified in an approved SIP," Opp. at 9:11-13, conceding that case appropriately applied *Ex Parte Young* when it

1  ordered prospective injunctive relief to mandate specific compliance with a SIP.

2      The authority Defendants cite does not stand for the proposition that *Ex Parte Young* limits
3  prospective injunctive relief. Opp. Br. at 6:1-6. In *Virginia Office for Protection and Advocacy v.*
4  *Stewart*, the plaintiff state agency sought "an injunction requiring the production of the records, which
5  would prospectively abate the alleged violation." 563 U.S. 247, 255-256 (2011). The Court held that,
6  "by straightforwardly applying *Ex Parte Young* to allow this suit," the relief sought did not encroach on
7  Virginia's sovereignty. *Id*. at 261. Defendants also rely on *Green v. Mansour*, 474 U.S. 64, 68 (1985), in
8  arguing for limited prospective injunctive relief. Opp. Br. at 6:2-3. But the Court in *Green* held that the
9  *Ex Parte Young* doctrine did not permit *retrospective* declaratory and notice relief when Congress's
10 amendments to the Aid to Families With Dependent Children program mooted prospective injunctive
11 and declaratory relief. *Green*, 474 U.S. at 74. *Virginia Office* and *Green* thus do not cabin this Court's
12 jurisdiction to provide injunctive relief that mandates compliance with the three percent standard.

13     **II.**     **Injunctive Relief should Require Adoption and Submission within 180 days.**

14         A.     Congress wanted contingency measures ready for implementation upon a failure to
15             attain.

16     This Court should order relief that ensures Defendants adopt and submit the attainment
17 contingency measures consistent with the timing and purpose of section 172(c)(9). Defendants concede
18 the measures must "be in a form that allows them to take effect without further action on the part of EPA
19 or CARB." Opp. Br. at 6:18. However, Defendants' proposed 18-month period would afford no time for
20 EPA to act, as it must, to review and approve the measures when the submission to EPA will occur well
21 after the June 15, 2024 attainment date.[1] This untenable position relies on an inapposite administrative
22 remedial scheme.

23     The 18-month "sanctions clock" grace period afforded by section 179(a) of the Act, 42 U.S.C. §
24 7509(a), only applies when EPA makes a finding of failure to submit. Neither section 179 nor the Act's
25 citizen suit provision authorize this Court to provide section 179 remedies. 42 U.S.C. §§ 7509, 7604(a).

---

[1] Assuming this Court issues an order on March 1, 2023, then Defendants effectively propose a September 1, 2024 deadline to submit the measures to EPA, more than 2 months after the attainment deadline of June 15, 2024 and more than halfway through EPA's 6-month period to make an attainment finding. 42 U.S.C. § 7509(c)(1).

Furthermore, none of the authority on which Defendants rely hold or otherwise justify the use of the sanctions clock grace period as a remedy in a citizen suit to enforce an emission standard or limitation. Opp. Br. at 10:9 to 12:6. Instead, that authority emphasizes reliance on Congressional direction or pragmatic approaches when the time for administrative action has come and gone. *See Am. Lung Ass'n of J.N. v. Kean*, 871 F.2d 319, 327 (most original deadlines for a remedy to enforce an emission standard or limitation had already passed); *Natural Resources Council v. Train*, 510 F.2d 692, 712-713 (D.C. Cir. 1974) (a district court should compel EPA to correct its statutory violations as soon as possible); *Delaney v. EPA*, 898 F.2d 687, 691 (9th Cir. 1990) ("When Congress has explicitly set an absolute deadline, congressional intent is clear . . . The EPA cannot extract leeway from a statute that Congress explicitly intended to be strict.").

Rather than allowing 18 months under the inapplicable section 179 framework, this Court should provide a remedy that gives effect to the express language and purpose of the contingency measures provision when the window for statutory compliance has not passed. Congress wanted the attainment plans to include contingency measures ready for implementation without any further action by the CARB or EPA.

> Such plan shall provide for the implementation of specific measures to be undertaken if the area fails to make reasonable further progress, or to attain the national primary ambient air quality standard by the attainment date applicable under this part. Such measures shall be included in the plan revision as contingency measures to take effect in any such case without further action by the State or the Administrator.

42 U.S.C. § 7502(c)(9); *see also Association of Irritated Residents v. U.S. E.P.A.*, 10 F.4th 937, 946-947 (9th Cir. 2021) ("the reason the statute requires contingency measures is to have a backup that can be put in place immediately in case already-implemented measures in a plan fail").

Defendants proposed remedy would eviscerate this provision by having the measures arrive at EPA after the June 15, 2004 attainment deadline and no time for EPA to review and approve them as part of the 2007 Ozone Plan. And while EPA does have six months after June 15, 2024 to make a finding of failure to attain, Congress wanted that finding "as expeditiously as practicable . . . but not later than 6 months." 42 U.S.C. § 7509(c)(1). "A 'basic rule of statutory construction is that one provision should not be interpreted in a way which is internally contradictory or that renders other

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:22-CV-01714-TLN-CKD                                                                                      9

provisions of the same statue inconsistent or meaningless.'" *Bayview*, 366 F.3d at 700 (quoting *Hughes Air Corp. v. Public Utilities Comm'n*, 644 F.2d 1334, 1338 (9th Cir. 1981)). Accordingly, this Court should not interpret the Act to allow section 179(a) to override section 172(c)(9) because Congress wanted continency measures in attainment plans, ready to take effect, and without further action by EPA.

### B.    Equitable factors do not warrant abrogating the requirements of section 172(c)(9).

Relying on *Train* and its progeny, Defendants mistakenly attempt to justify that budgetary commitments, personnel limitations, impending EPA guidance, and the procedure required by the California Administrative Procedure Act ("CAPA") render "infeasible" any period less than 18 months. Opp. at 13:3 to 14:20 (citing Declaration of Sylvia Vanderspek (Dkt. No. 21-1)). The Court should reject these insufficient contentions and not override Congress's objectives to ensure meaningful contingency measures in the 2007 Ozone Plan ready for implementation upon a failure to attain. *See United States v. Oakland Cannabis Buyers' Co-Op.*, 532 U.S. 483, 497 (2001) ("Courts of equity cannot, in their discretion, reject the balance that Congress has struck in a statute").

First, Defendants should not claim that additional time to comply with the CAPA makes the 18-month period necessary because Defendants ignore the CAPA's emergency rulemaking procedures. *See* Opp. at 13:3-14; Vanderspek Decl. ¶¶ 17-22; Cal. Gov. Code § 11346.1. With the attainment deadline approaching, the ozone health crisis in the San Joaquin Valley, and the needed time for EPA to review and approve the measures, CARB has authority to find that an emergency exists. Cal. Gov. Code § 11342.545 (emergency defined as "a situation that calls for immediate action to avoid serious harm to the public peace, health, safety, or general welfare"); *see also Doe v. Wilson*, 57 Cal.App.4th 296, 306 (1997) (holding that compliance with federal law presented an emergency). Even though CARB delayed several years, CARB may still find an emergency exists by demonstrating why CARB did not adopt the measures through nonemergency regulations. *See* Cal. Gov. Code § 11346.1(b)(2). The emergency procedures provide for a five-day public notice period, a ten-day period for approval by the Office of Administrative Law, and for the contingency measures to take effect immediately upon filing them with the Office notwithstanding the limits of Senate Bill 1099. *See* Cal. Gov. Code §§ 11346.1(a)(2), 11346.1(d), 11349.6(b); Vanderspek Decl. ¶ 21 (claiming SB 1099 alone accounts for a one to four-month delay). After the adoption of the emergency regulations, CARB would have 180-days to comply

with notice, public participation, and hearing requirements to allow the regulation to have permanent effect. Cal. Gov. Code § 11346.1(e) (incorporating public participation requirements of Gov. Code §§ 11346.2 through 11347.3). These emergency rulemaking procedures, and the after-the-fact public participation provision, ensure that Defendants can significantly shorten the rulemaking period and allow for EPA review and CAPA compliance on parallel tracks.

Second, budgetary and personnel resource limitations should not override Congressional intent to ensure the measures will take effect without further action by EPA when CARB has known about its duty for several years and has failed to act. In late 2019, CARB acknowledged its duty to adopt the attainment contingency measures in the Progress Report. *See* State Defendants' Response to Plaintiffs' Statement of Uncontested Facts, Fact 4 (Dkt. No. 21-2); Vanderspek Decl., ¶ 14. Defendants blame the "COVID-19 lockdowns" and CARB's decision "to wait for EPA to restart the conversation" as the reasons for the delay. Opp. at 5:7-8. "It is the Court's role to 'separate justifications grounded in the purposes of the [statute] from the footdragging efforts of a delinquent agency.'" *In re Ozone Designation Litigation*, 286 F.Supp.3d 1082, 1086 (N.D. Cal. 2018) (quoting *Train*, 510 F.2d at 713). Budget constraints and personnel resources should not override section 172(c)(9).

Third, the impending EPA contingency measure guidance should not justify an 18-month period for compliance. Opp. at 13:14-22. The EPA-approved SIP here requires both RFP and attainment contingency measures to achieve the three percent reduction standard and CARB has not submitted a SIP revision. *See* Section I.B, *supra*. Moreover, the Ninth Circuit recently rejected an EPA interpretation that would have allowed contingency measures amounting to less than three percent. *Association of Irritated Residents*, 10 F.4th at 946-947 (EPA did not provide a reasoned explanation consistent with the Clean Air Act for an amount less than the long-standing three percent requirement). A potential second EPA interpretation allowing less than three percent would face a skeptical Ninth Circuit. *Id*.

### III. Conclusion.

For the foregoing reasons, the Court should grant injunctive relief that ensures compliance with the three percent standard and requires adoption and submission of the contingency measures within 180 days.

///

///

Dated: January 25, 2023             Respectfully Submitted,

/s/ Brent J. Newell
Brent J. Newell
Attorney for Plaintiffs
Central California Environmental Justice Network, *et al.*

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system on January 25, 2023, which will send notification of said filing to the attorneys of record, who are required to have registered with the Court's CM/ECF system.

/s/ Brent Newell
Brent Newell