**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTRAL CALIFORNIA ENVIRONMENTAL JUSTICE NETWORK, COMMITTEE FOR A BETTER ARVIN, MEDICAL ADVOCATES FOR HEALTHY AIR, and HEALTHY ENVIRONMENT FOR ALL,<br><br>Plaintiffs,<br><br>v.<br><br>LIANE RANDOLPH, in her official capacity as Chair of the Air Resources Board; STEVEN CLIFF, in his official capacity as Executive Officer of the Air Resources Board; SANDRA BERG, JOHN EISENHUT, DANIEL SPERLING, JOHN BALMES, DIANE TAKVORIAN, DEAN FLOREZ, HECTOR DE LA TORRE, DAVINA HURT, BARBARA RIORDAN, PHIL SERNA, NORA VARGAS, TANIA PACHECO-WERNER, and GIDEON KRACOV, in their official capacities as Board Members of the Air Resources Board; CONNIE LEYVA and EDUARDO GARCIA, in their official capacities as *Ex Officio* Board Members of the Air Resources Board; SAN JOAQUIN VALLEY UNIFIED AIR POLLUTION CONTROL DISTRICT; and the GOVERNING BOARD OF THE SAN JOAQUIN VALLEY UNIFIED AIR POLLUTION CONTROL DISTRICT,<br><br>Defendants. | No. 2:22-cv-01714-DJC-CKD<br><br>**ORDER GRANTING STATE DEFENDANTS' REQUEST FOR JUDICIAL NOTICE; GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; AND WITHHOLDING SUBMISSION OF PLAINTIFFS' MOTION REGARDING DEFENDANTS' OFFER OF JUDGMENT** |

This case concerns California's long-running efforts to reduce air pollution in the San Joaquin Valley to levels required under the Clean Air Act.  Central California Environmental Justice Network, Committee for a Better Arvin, Medical Advocates for Healthy Air, and Healthy Environment for All Lives ("Plaintiffs") move for summary judgment and seek an injunction ordering members of the California Air Resources Board ("CARB") in their official capacity ("State Defendants") and the San Joaquin Valley Unified Air Pollution Control District and its Governing Board (together referred to as "San Joaquin Valley Air Pollution Control District" or "District Defendants") to comply with the Clean Air Act and "develop, adopt, and submit [attainment contingency] measures within 180 days."  (Pls.' Mem. of P. and A. in supp. of. Pls.' Mot. for Summ. J. (ECF No. 17-1) at 20 ("MSJ").)  State Defendants and District Defendants ("Defendants") for their part "do not contest any of the three Issues identified by Plaintiffs[,]" instead only disputing the proper remedy.  (State Defs.' Mem. of P. and A. in Opp'n to Pls.' Mot. for Summ. J. (ECF No. 21) at1–2 ("MSJ Opp'n").)

For the reasons set forth below, the Court GRANTS Plaintiffs' Motion for Summary Judgment and orders Defendants to submit attainment contingency measures for approval by the Environmental Protection Agency ("EPA") with sufficient time for the EPA to review and approve before the December 15, 2024 final attainment decision deadline for the EPA.  The Court shall retain jurisdiction to modify and ensure compliance with its order.

## BACKGROUND

## I.    The Clean Air Act

The Clean Air Act of 1970, codified at 42 U.S.C. § 7401, *et seq.* authorized the EPA to establish national ambient air quality standards ("NAAQS").  *See Friends of the Earth v. Carey*, 535 F.3d 165, 168 (2d Cir. 1976) ("*Carey*").  National ambient air quality standards established by the EPA "set maximum levels for certain air-borne toxins." *Am. Lung Ass'n of N.J. v. Kean*, 871 F.2d 319, 322 (3d Cir. 1989) ("*AMA of New Jersey*").  States must attain the relevant NAAQS based on "an elaborate timetable"

1 Congress created in the 1990 amendments because of "perceived 'widespread

2 failure' to meet the air quality standards . . . ." *Hall v. U.S. E.P.A.*, 273 F.3d 1146, 1153–

3 54 (9th Cir. 2001) (footnote omitted).

4      The Clean Air Act designates areas as "air quality control regions" with three

5 possible classifications: attainment, nonattainment, and unclassifiable. *See* 42 U.S.C.

6 § 7407(b), (d). For nonattainment areas, the Clean Air Act further classifies them as:

7 (1) "Marginal;" (2) "Moderate;" (3) "Serious;" (4) "Severe;" or (5) "Extreme." *See* 42

8 U.S.C. § 7511(a)(1). "For each area classified under this subsection, the primary

9 standard attainment date for ozone shall be as expeditiously as practicable but not

10 later than the date provided in [a table]." *Id.* These attainment deadlines for

11 nonattainment areas are particularly important because failure to attain by the relevant

12 deadline triggers automatic reclassification to a higher designation, which can expose

13 the State to sanctions and fines, *see* 42 U.S.C. § 7511(b)(4) (consequences for a

14 "Severe" area for failing to attain a standard); 42 U.S.C. § 7509 (consequences for a

15 State for failing to attain a standard in general). *See generally* 42 U.S.C. §§ 7511–11f.

16      States create the plans, called state implementation plans or "SIPs", that

17 execute the goals set by the EPA and Congress. *See South Coast Air Quality Mgmt.*

18 *Dist. v. E.P.A.*, 472 F.3d 882, 886 (D.C. Cir. 2006) ("*South Coast I*") (citing 42 U.S.C.

19 § 7410). "These SIPs are promulgated by state agencies after notice and comment

20 and must be approved by the EPA after it conducts its own notice and comment

21 proceedings." *AMA of New Jersey*, 871 F.2d at 322 (citing 42 U.S.C. § 7410). CARB

22 adopts and submits SIPs and SIP revisions to the EPA that are created by the local

23 districts, such as the San Joaquin Valley Air Pollution Control District.[1] "By virtue of the

24 States' roles in devising a strategy and adopting an implementation plan, the Supreme

25 Court has emphasized that '[i]t is to the States that the [Clean Air] Act assigns initial

---

[1] *See* Clean Air Plans; 2008 8-Hour Ozone Nonattainment Area Requirements; San Joaquin Valley, California, 83 Fed. Reg. 44,528, 44,529 (proposed Aug. 31, 2018) (codified at 40 C.F.R. Part 52) ("2018 Proposed Partial Approval of San Joaquin Valley's 2008 Eight-Hour Ozone Plan").

and primary responsibility for deciding what emissions reductions will be required from which sources.'"  *Hall*, 273 F.3d at 1153 (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 470–72 (2001)) (first alteration included; second alteration added).

"Since abatement and control of air pollution through systematic and timely attainment of the air quality standards is Congress' overriding objective, a [state implementation] plan, once adopted by a state and approved by the EPA, becomes controlling and must be carried out by the state."  *Carey*, 535 F.2d at 169.  A state "may not unilaterally alter the legal commitments of its SIP once [the] EPA approves the plan."  *Safe Air for Everyone v. U.S. E.P.A.*, 488 F.3d 1088, 1097 (9th Cir. 2007) ("*SAFE v. EPA*") (citing 42 U.S.C. § 7416).  After approval, the Clean Air Act offers few alternatives for states trying to modify their commitments.  *See Carey*, 535 F.2d at 169. A state may submit revisions, reclassify to a higher designation, or attain the standard. To the extent any plan revisions are permitted, "[t]he [EPA] Administrator shall not approve a revision of a plan if the revision would interfere with any applicable requirement concerning attainment and reasonable further progress (as defined in section 7501 of this title), or any other applicable requirement of this chapter."  42 U.S.C. § 7410(*l*).  The EPA Administrator may redesignate an area from nonattainment to attainment only if certain conditions are met that require the EPA Administrator to find all outstanding commitments satisfied and that the area attained the relevant standard due to "permanent and enforceable reductions in emissions . . . ."  42 U.S.C. § 7407(d)(3)(E).  "In all other instances, the State is relegated to a lone option: compliance."  *Carey*, 535 F.2d at 178 (citations omitted).

The Clean Air Act "provides a private right of action for citizens to enforce an SIP by bringing a civil action in federal district court."  *Sierra Club v. U.S. E.P.A.*, 671 F.3d 955, 959 (9th Cir. 2012) (citing 42 U.S.C. § 7604) ("*Sierra Club*").  This cause of action enforcing a SIP arises under 42 U.S.C. section 7604(a).  When Congress crafted the citizen-suit provision of the Clean Air Act, "Congress made clear that citizen groups are not to be treated as nuisances or troublemakers but rather as welcomed

1   participants in the vindication of environmental interests.  Fearing that administrative

2   enforcement might falter or stall, 'the citizen suits provision reflected a deliberate

3   choice by Congress to widen citizens access to the courts, as a supplemental and

4   effective assurance that the Act would be implemented and enforced.'"  *Carey*, 535

5   F.2d at 172 (quoting *Natural Resources Defense Council, Inc. v. Train*, 510 F.2d 692,

6   700 (D.C. Cir. 1975) ("*NRDC v. Train*")).  "Citizens' suits are limited to enforcing a SIP's

7   specific strategies, however, and may not enforce its overall objectives or aspirational

8   goals." *El Commité Para el Bienestar de Earlimart v. U.S. E.P.A.*, 786 F.3d 688, 692 (9th

9   Cir. 2015) ("*El Comité*") (citing *Bayview Hunters Cmty. Advocs. v. Metro. Transp.*

10   *Comm'n*, 366 F.3d 692, 701 (9th Cir. 2004)).

11   **II.    The San Joaquin Valley's Air Pollution Problem**

12            **A.    The EPA's Ozone Standards Applied to the San Joaquin Valley**

13            "The San Joaquin Valley is a large inland area of California extending from the

14   Sacramento-San Joaquin Delta in the north to the Tehachapi Mountains in the South."

15   *Ass'n of Irritated Residents v. U.S. Env't Prot. Agency*, 10 F.4th 937, 942 (9th Cir. 2021)

16   ("*AIR v. EPA*").  As the Ninth Circuit recently recognized, "the [San Joaquin] Valley has

17   long struggled to attain air quality standards for ozone."  *Id.*  "The Valley has long

18   been 'an area with some of the worst air quality in the United States,' and it has

19   repeatedly failed to meet air quality standards."  *Id.* at 944 (quoting *Committee for a*

20   *Better Arvin v. U.S. E.P.A.*, 786 F.3d 1169, 1173 (9th Cir. 2015)).

21            In brief, the EPA has revised the applicable ozone standard three times, first

22   establishing the 1979 One-Hour Ozone standard that was replaced by the 1997 Eight-

23   Hour Ozone standard, then by the 2008 Eight-Hour Ozone standard, then by the 2015

24   Eight-Hour Ozone standard, which is currently in effect.[2]  While the EPA expressly

25   revoked two of these standards (the 1979 One-Hour Ozone standard and the 1997

26   Eight-Hour Ozone standard), for areas that failed to satisfy the prior standards when

---

[2] *See* Review of the Ozone National Ambient Air Quality Standards, 85 Fed. Reg. 87,256, 87,259–60 (Dec. 31, 2020) (codified at 40 C.F.R. Part 50) (final action explaining history of air quality standards).

1  they applied, these nonattainment areas remain subject to outstanding requirements

2  under the prior standards because of anti-backsliding provisions in the Clean Air Act,

3  including, relevant here, contingency measures under sections 172(c)(9) (codified at

4  42 U.S.C. section 7502) and 182(c)(9) (codified at 42 U.S.C. section 7511a).[3]  The San

5  Joaquin Valley is one of these nonattainment areas for the 1997 Eight-Hour Ozone

6  standard, and thus has outstanding obligations under that standard that are at issue in

7  the instant lawsuit.  As a result, Defendants have overlapping and potentially

8  duplicative requirements under the 1997 and 2008 Ozone standards.[4]

9          **B.    The 1997 Eight-Hour Ozone SIP**

10         On September 27, 2007, CARB adopted the State Strategy for California's 2007

11  State Implementation Plan ("State Strategy").  (*See* Compl. ¶ 42.)  On April 24, 2009,

12  CARB adopted the Status Report on the State Strategy for California's 2007 State

13  Implementation Plan and Proposed Revision to the SIP Reflecting Implementation of

14  the 2007 State Strategy ("Status Report").  (*See* Compl. ¶ 44.)  Each of these

15  documents was submitted to the EPA to satisfy portions of the state implementation

16  plan for the 1997 Eight-Hour Ozone standard.

17         To clarify the State's obligations under the SIP it had proposed to the EPA, on

18  July 21, 2011, CARB adopted Resolution 11-22, which includes "a commitment by the

19  State to develop, adopt, and submit contingency measures by 2020 if advanced

20  technology measures do not achieve planned reductions."  (State Defs.' Resp. to Pls.'

21  Statement of Undisputed Facts (ECF No. 21-2) No. 1 ("SOF") (undisputed) (citing

---

[3] *See* Implementation of the 2008 National Ambient Air Quality Standards for Ozone: State Implementation Plan Requirements, 80 Fed. Reg. 12,264, 12,285, 12,296 (Mar. 6, 2015) (codified at 40 C.F.R. Parts 50–52 and 70–71) ("Final 2008 Eight-Hour Ozone Implementation Rule").

[4] *See* Withdrawal and Partial Approval/Partial Disapproval of Clean Air Plans; San Joaquin Valley, California; Contingency Measures for 2008 Ozone Standards, 87 Fed. Reg. 59,688, 59,690 (Oct. 3, 2022) (codified at 40 C.F.R. Part 52) (taking final action to disapprove the submitted contingency measures in light of *AIR v. EPA*).  *Contrast with* Final 2008 Eight-Hour Ozone Implementation Rule, 80 Fed. Reg. at 12,297 ("In this time of diminished resources, the [S]tates and the EPA need to move forward efficiently without being overburdened by unnecessary paperwork requirements arising from former standards that can detract from efficient movement towards more stringent standards.").

1   Declaration of Brent Newell (ECF No. 17-8) at 1:5–6 ("Newell Decl.")); MSJ Ex. 1 (ECF

2   No. 17-9) at 4 ("CARB Res. 11-22") (providing a copy of CARB Res. 11-22).)  In light of

3   this resolution, the EPA then proposed to approve the San Joaquin Valley's SIP

4   revisions for the 1997 Eight-Hour Ozone standard.[5]  The EPA's proposed approval was

5   conditioned on several commitments from the San Joaquin Valley and CARB,

6   including "the State's enforceable commitment 'to develop, adopt, and submit

7   contingency measures by 2020 if advanced technology measures do not achieve

8   planned reductions.'"[6]  The EPA also noted that "CARB has committed to meet

9   annually with [the] EPA" regarding contingency measures and new technologies.[7]

10         In a letter dated November 18, 2011, CARB affirmed the EPA's interpretation of

11   Resolution 11-22 to include a commitment to develop, adopt, and submit by 2020

12   attainment contingency measures.  (See SOF No. 2 (undisputed) (citing Newell Decl.

13   ¶ 4; MSJ Ex. 2 (ECF No. 17-10) at 2 ("11/18/2011 Letter from CARB to the EPA re

14   Contingency Measures").)  CARB stated in the November 18, 2011 letter to the EPA,

15   despite some ambiguity in the language of its commitment, that "[C]ARB is making an

16   enforceable commitment now, and this commitment is to 'develop, adopt, and submit

17   contingency measures by 2020 if advanced technology measures do not achieve

18   planned reductions.'" (11/18/2011 Letter from CARB to the EPA re Contingency

19   Measures at 2.)  CARB further confirmed that this commitment also included "an

[5] See Approval of Air Quality Implementation Plans; California; San Joaquin Valley; Attainment Plan for 1997 8-Hour Ozone Standard, 76 Fed. Reg. 57,846 (proposed Sept. 16, 2011) (codified at 40 C.F.R. Part 52) ("2011 Proposed Approval of the San Joaquin Valley's 1997 Eight-Hour Ozone SIP Revisions").

[6] 2011 Proposed Approval of the San Joaquin Valley's 1997 Eight-Hour Ozone SIP Revisions, 76 Fed. Reg. at 57,855 (quoting CARB Res. 11-22); see also id. at 57,864 ("[W]e propose to approve CARB's enforceable commitment to submit, no later than 2020, additional contingency measures under CAA section 182(e)(5) that meet the requirements for attainment contingency measures in CAA section 172(c)(9), in addition to contingency measures to be implemented if the anticipated long-term measures approved pursuant to section 182(e)(5) do not achieve planned reductions." (footnote omitted) (citing CARB Res. 11-22)).

[7] 2011 Proposed Approval of the San Joaquin Valley's 1997 Eight-Hour Ozone SIP, 76 Fed. Reg. at 57,855; see Approval of Air Quality Implementation Plans; California; San Joaquin Valley; Attainment Plan for 1997 8-Hour Ozone Standards, 77 Fed. Reg. 12,652, 12,654 (Mar. 1, 2012) (codified at 40 C.F.R. Part 52) ("2012 Final Approval of the San Joaquin Valley's 1997 Eight-Hour Ozone SIP Revisions").

1    enforceable commitment, in accordance with sections 172(c)(9) and 182(e)(5) of the

2    Clean Air Act, to adopt and implement specific contingency measures to be

3    undertaken if the South Coast or San Joaquin Valley nonattainment areas fail to attain

4    the national 8-hour ambient air quality standard for ozone by the applicable

5    attainment date." (*Id.*)

6          Although section 172(c)(9) of the Clean Air Act does not state when these

7    contingency measures must be submitted to the EPA Administrator, CARB stated that

8    "[c]onsistent with section 182(e)(5), [C]ARB has committed to submit such contingency

9    measures to U.S. EPA no later than three years before the applicable attainment date."

10   (11/18/2011 Letter from CARB to the EPA re Contingency Measures at 2.)  Following

11   this, the EPA included CARB Resolution 11-22 in the Code of Federal Regulations

12   codifying portions of California's SIPs, which is described as including a

13   "[c]ommitment to develop, adopt and submit by 2020 contingency measures to be

14   implemented if advanced technology measures do not achieve the planned

15   reductions and attainment contingency measures meeting the requirements of [Clean

16   Air Act section] 172(c)(9), pursuant to [Clean Air Act] section 182(e)(5) as given on

17   page 4."  40 C.F.R. § 52.220(396)(ii)(A)(2)(i).  Thus, the SIP addressing the 1997 Eight-

18   Hour Ozone standard in the San Joaquin Valley consists of the aforementioned

19   documents, specifically including "CARB's July 2011 revisions to the Ozone SIP (CARB

20   Resolution 11-22 (Jul. 21, 2011))."  (MSJ Opp'n at 4.)

21   **III.   Proecural History**

22         Plaintiffs filed the Complaint after giving Defendants sixty days written notice on

23   July 29, 2022 as required by the Clean Air Act, 42 U.S.C. section 7604(b)(1).  (*See*

24   Compl. ¶ 11; *also* Compl. Ex. 1 (ECF No. 1-1) (providing a copy of the 7/29/2022 letter

25   from Plaintiffs' counsel to Defendants).)  After Defendants filed answers (*see* State

26   Defs.' Answer (ECF No. 14); District Defs.' Answer (ECF No. 13)), Plaintiffs and State

27   Defendants filed a joint scheduling report (*see* Joint Sched. Rep. (ECF No. 16) ("JSR")).

28   In the Joint Scheduling Report, "Defendants admit that the State Implementation Plan

1   included a commitment to develop, adopt, and submit 42 U.S.C. § 7502(c)(9)

2   contingency measures to [the] EPA by 2020, and that this commitment is outstanding."

3   (JSR at 2.)  As Defendants framed the case: "[t]he only issue is what, if anything, is the

4   proper remedy in this action under the Clean Air Act, including whether jurisdiction

5   properly lies in this Court."  (*Id.* (citing 42 U.S.C. §§ 7509, 7604).)

6        On November 28, 2022, Plaintiffs filed their Motion for Summary Judgment.

7   (*See* MSJ ("Motion"); Pls.' Mot. re Defs.' Judgment Offer or to Quash Service of

8   Judgment (ECF No. 20-1) at 4 ("Rule 68 Motion" or "Rule 68 Mot.").)  On March 28,

9   2023, after the Motion for Summary Judgment was fully briefed, State Defendants

10  filed a Request for Judicial Notice (*see* ECF No. 30 (motion for administrative relief to

11  file request for judicial notice); ECF No. 30-1 at 1–4 (request for judicial notice); ECF

12  No. 30-1 at 5–48 ("Draft EPA Guidance on Nonattainment Area SIP Contingency

13  Measures")), which Plaintiffs opposed (*see* ECF No. 31).

14       On April 4, 2023, Plaintiffs' case was reassigned to this Court.  (*See* ECF No. 32.)

15  On April 27, 2023, Plaintiffs filed a motion for an expedited decision regarding the

16  outstanding Motion for Summary Judgment.  (*See* ECF No. 34.)  The Court denied the

17  motion as moot because the Court ordered oral arguments on all outstanding

18  motions (i.e., the Motion for Summary Judgment, the Rule 68 Motion, and the Request

19  for Judicial Notice) for July 6, 2023.  (*See* ECF No. 35.)  The Court also granted the

20  Parties' stipulation that Committee for a Better Arvin file a supplemental standing

21  declaration, which Plaintiffs filed on June 20, 2023.  (*See* ECF No 37 (order); ECF No.

22  38 (supplemental declaration).)  Following oral argument, the Court also granted

23  Defendants the option of providing updates on any progress towards proposing

24  attainment contingency measures for the 1997 Eight-Hour Ozone standard for the

25  EPA to approve.  (*See* ECF No. 39.)  Defendants filed a supplemental declaration from

26  Sylvia Vanderspek.  (*See* Decl. in Opp'n to Pls.' Mot. for Summ. J. (ECF No. 40)

27  ("Supplemental Vanderspek Declaration" or "Vanderspek Suppl. Decl.").)  The motions

28  are now fully briefed and argued.

1  **ANALYSIS**

2  **I.    Request for Judicial Notice**

3      **A.    Standard**

4          Only one rule covers judicial notice, Federal Rule of Evidence 201, which

5  governs "judicial notice of an adjudicative fact only, not a legislative fact."  Fed. R.

6  Evid. 201(a).  Courts may take judicial notice of an adjudicative fact that is "not subject

7  to reasonable dispute."  Fed. R. Evid. 201(b); *see also Khoja v. Orexigen Therapeutics,*

8  *Inc.*, 899 F.3d 988, 994 (9th Cir. 2018) ("clarify[ing] when it is proper to take judicial

9  notice of facts in documents, or to incorporate by reference documents in a

10  complaint, and when it is not[]").  A fact is "not subject to reasonable dispute" if it

11  "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be

12  accurately and readily determined from sources whose accuracy cannot reasonably

13  be questioned."  Fed. R. Evid. 201(b).  A court may therefore take judicial notice of

14  matters of public record, but the court may not take judicial notice of disputed facts

15  contained in those public records.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689

16  (9th Cir. 2001); *United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 999 (9th

17  Cir. 2011) (finding that financial reports submitted by Ernst and Young were not

18  judicially noticeable because Ernst and Young's compliance with the Higher

19  Education Act was an "open question[] requiring further factual development[]").

20  However, the court "must take judicial notice if a party requests it and the court is

21  supplied with the necessary information."  Fed. R. Evid. 201(c)(2).

22      **B.    Analysis**

23          Defendants ask this Court to take judicial notice of draft EPA guidance made in

24  response to the Ninth Circuit's decision in *AIR v. EPA*, 10 F.4th at 937, proposing to

25  change the method of calculating progress for contingency measures.  (*See* ECF No.

26  30 at 3; *generally* Draft EPA Guidance on Nonattainment Area SIP Contingency

27  Measures.)  Plaintiffs oppose, first arguing that Defendants are procedurally barred

28  from making such motions at this time, and second arguing that Defendants are

precluded from introducing such evidence because it is not relevant.  (*See* ECF No. 31 at 2–3.)  Plaintiffs' objections are without merit.

Regarding Plaintiff's procedural objection, local rules cannot trump the federal rules.  *See Marshall v. Gates*, 44 F.3d 722, 724 (9th Cir. 1995) (quoting Fed. R. Civ. P. 83).  "A local rule must be consistent with—but not duplicate—federal statutes and rules . . . ."  Fed. R. Civ. P. 83(a)(1).  Federal Rule of Evidence 201, the only rule governing judicial notice, states that the court "must take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2).  "The court may take judicial notice at any stage of the proceeding."  Fed. R. Evid. 201(d).  Therefore, if Defendants request judicial notice of information and Defendants supply the information to grant such a request, this Court must grant it.

Plaintiffs' second objection regarding the substantive relevance of the EPA's draft guidance similarly has no merit.  First, the United States Code clearly states that "[t]he contents of the Federal Register shall be judicially noticed . . . ."  44 U.S.C. § 1507.  Second, the Ninth Circuit has previously granted a request to take judicial notice of a proposed rulemaking published in the Federal Register, as here.  *See Bayview*, 366 F.3d at 702 n.5.

### C.    Conclusion

Because Defendants have requested this Court to take judicial notice of the draft EPA guidance and have provided the material for doing so, the Court GRANTS Defendants' Motion for Administrative Relief and GRANTS Defendants' Request for Judicial Notice.  Accordingly, the Court takes judicial notice of the entire draft EPA guidance.

## II.    Motion for Summary Judgment

### A.    Standard

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and

1   that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c);

2   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The "threshold inquiry" is whether

3   "there are any genuine factual issues that properly can be resolved only by a finder of

4   fact because they may reasonably be resolved in favor of either party" or conversely

5   "whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v.*

6   *Liberty Lobby, Inc.*, 477 U.S. 242, 250–52 (1986).  Here, no facts are disputed.  (*See*

7   *generally* SOF Nos. 1–8.)

8       **B.    Analysis**

9       Plaintiffs identify three issues in their Motion for Summary Judgment.  (*See* MSJ

10  at 1–2 (providing a Statement of Issues).)  First, Plaintiffs ask this Court to determine

11  "[w]hether the commitment in the State Implementation Plan to develop, adopt, and

12  submit by 2020 attainment contingency measures and advanced technology

13  contingency measures is an emission standard or limitation and an enforceable

14  strategy." (*Id.* at 1.)  Second, Plaintiffs ask this Court to determine "[w]hether

15  Defendants violated an emission standard or limitation when Defendants failed to

16  develop, adopt, and submit attainment contingency measures."  (*Id.* at 2.)  Third,

17  Plaintiffs ask "[w]hether the Court should order Defendants to develop, adopt, and

18  submit the attainment contingency measures." (*Id.*)  "Defendants do not contest any

19  of the three Issues identified by Plaintiffs. . . . Rather, the only disputed issue before

20  the Court is . . . : [] To the extent the Court determines judgment is warranted, what is

21  the proper remedy?"  (MSJ Opp'n at 2 (citation omitted).)

22          **1.    Plaintiffs Have Established Article III Standing to Sue.**

23      While none of the Defendants currently raises the issue of whether Plaintiffs

24  have standing, Article III courts "have 'an independent obligation to assure that

25  standing exists, regardless of whether it is challenged by any of the parties.'"  *Central*

26  *Sierra Env't Resources Ctr. v. Stanislaus Nat'l Forest*, 30 F.4th 929, 937 (9th Cir. 2022)

27  (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 489 (2009)).  Federal courts have

28  this independent obligation because "the core component of standing is an essential

1   and unchanging part of the case-or-controversy requirement of Article III[,]" *Lujan v.*
2   *Defenders of Wildlife*, 504 U.S. 555, 560 (1992), and "[t]he 'law of Art[icle] III standing
3   is built on a single basic idea–the idea of separation of powers.'" *TransUnion LLC v.*
4   *Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 820
5   (1997) (internal quotation marks omitted)).  Nonetheless, the Court finds that Plaintiffs
6   have established standing.

7   　　　The Supreme Court has "established that the irreducible minimum of standing
8   contains three elements." *Lujan*, 504 U.S. at 560.  "To establish Article III standing, a
9   plaintiff must show (1) that it has suffered an injury in fact that is (a) concrete and
10  particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury
11  is fairly traceable to the challenged action of the defendant; and (3) it is likely, as
12  opposed to merely speculative, that the injury will be redressed by a favorable
13  decision." *AIR v. EPA*, 10 F.4th at 943 (quoting *Friends of the Earth, Inc. v. Laidlaw*
14  *Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)) (internal quotation marks
15  omitted).  "An association has standing to bring suit on behalf of its members when its
16  members would otherwise have standing to sue in their own right, the interests at
17  stake are germane to the organization's purpose, and neither the claim asserted nor
18  the relief requested requires the participation of individual members in the lawsuit."
19  *Friends of the Earth*, 528 U.S. at 171 (citing *Hunt v. Wash. St.  Apple Advert. Comm'n*,
20  432 U.S. 333, 343 (1977)).

21  　　　The party invoking federal jurisdiction bears the burden of establishing
22  standing.  *See TransUnion*, 141 S. Ct. at 2201–02 (citing *Lujan*, 504 U.S. at 561).  "But
23  standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 459 n.6 (1996).
24  "Since they are not mere pleading requirements but rather an indispensable part of
25  the plaintiff's case, each element must be supported in the same way as any other
26  matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and
27  degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S.
28  at 561 (citations omitted).  Every party invoking a federal court's jurisdiction must

1   assert standing, and "plaintiffs must demonstrate standing for each claim that they

2   press and for each form of relief that they seek (for example, injunctive relief and

3   damages)." *TransUnion*, 141 S. Ct. at 2208 (citing *Davis v. Fed. Elec. Comm'n*, 554 U.S.

4   724, 733 (2008); *Friends of the Earth*, 528 U.S. at 185).

5        Here, Plaintiffs comprise four environmental organizations seeking declaratory

6   and injunctive relief against Defendants: (1) Central California Environmental Justice

7   Network, (2) Committee for a Better Arvin, (3) Medical Advocates for a Healthy Air,

8   and (4) Healthy Environment for All.  Each must establish standing individually as an

9   organization and for at least one of its members.  All four do.

10       At summary judgment, the Ninth Circuit has observed that declarations from

11  members can be sufficient to establish their individual Article III standing.  *Central*

12  *Sierra*, 30 F.4th at 937.  (*See also* Declaration of Nayamin Martinez (ECF No. 17-4)

13  ("Martinez Decl.") (establishing standing for Central California Environmental Justice

14  Network); Declaration of Estela Escoto (ECF No. 38) ("Escoto Decl.") (establishing

15  standing for Committee for a Better Arvin); Declaration of Kevin Hamilton (ECF No. 17-

16  6) ("Hamilton Decl.") (establishing standing for Medical Advocates for Healthy Air);

17  Declaration of Veronica Aguirre (ECF No. 17-7) ("Aguirre Decl.") (establishing standing

18  for Healthy Environment for All).)  Addressing the second and third requirements for

19  the associational or organizational standing of Plaintiffs, none of the individual

20  members are needed for declaratory or injunctive relief, and violations of the Clean

21  Air Act are germane to their missions as environmental organizations.  *See Central*

22  *Sierra*, 30 F.4th at 937.  (*See also* Martinez Decl. ¶¶ 3–4 (establishing Central California

23  Environmental Justice Network's mission); Escoto Decl. ¶¶ 3–5 (establishing

24  Committee for a Better Arvin's mission); Hamilton Decl. ¶ 2 (establishing Medical

25  Advocates for Healthy Air's mission); Aguirre Decl. ¶ 3 (establishing Healthy

26  Environment for All's mission).)  All that remains is for each Plaintiff to prove that at

27  least one member of its organization has standing, which each does.  *See Central*

28  *Sierra*, 30 F.4th at 937; *AIR v. EPA*, 10 F.4th at 943.

1     Courts have held "that environmental plaintiffs adequately allege injury in fact

2   when they aver that they use the affected area and are persons 'for whom the

3   aesthetic and recreational values of the area will be lessened' by the challenged

4   activity." *Friends of the Earth*, 528 U.S. at 182 (quoting *Sierra Club v. Morton*, 405 U.S.

5   727, 735 (1972)).  Applying that reasoning, the Ninth Circuit has explained that

6   "evidence of a credible threat to the plaintiff's physical well-being from airborne

7   pollutants falls well within the range of injuries to cognizable interests that may confer

8   standing." *AIR v. EPA*, 10 F.4th at 943 (quoting *Hall v. Norton*, 266 F.3d 969, 976 (9th

9   Cir. 2001)).  Here, each Plaintiff organization has credibly declared that one of its

10   members will suffer adverse health effects, incurred additional costs, and will not be

11   able to enjoy the same activities outside as before because of worsening air pollution.

12   (*See* Martinez Decl. ¶¶ 7–13; Escoto Decl. ¶¶ 8–10; Hamilton Decl. ¶¶ 10, 13–22;

13   Aguirre Decl. ¶¶ 5–8.)  Therefore, each Plaintiff has established an injury in fact that is

14   concrete and particularized and actual or imminent, not conjectural or hypothetical.

15     Plaintiffs each also satisfy the final two elements of Article III standing of

16   traceability and redressability.  The Ninth Circuit has already held that inadequate

17   contingency measures that must be implemented should the San Joaquin Valley fail to

18   meet attainment satisfy the traceability and redressability requirements of standing

19   given "[t]he threat that the Valley will continue to fail to meet the ozone standard—and

20   therefore that the contingency measure will be activated—is neither conjectural nor

21   hypothetical, but a reasonable inference from the historical record." *AIR v. EPA*, 10

22   F.4th at 944.  Thus, Plaintiffs have established standing to sue.

23     **2.    Defendants Adopted an Enforceable Commitment to Develop**

24     **Contingency Measures.**

25     The Clean Air Act provides a cause of action for citizens against any individual

26   or entity "to the extent permitted by the Eleventh Amendment" to, relevant here,

27   enforce an "emission standard or limitation" under the Clean Air Act.  *See* 42 U.S.C.

28   § 7604(a)(1).  "The district courts shall have jurisdiction, without regard to the amount

1    in controversy or the citizenship of the parties, to enforce such an emission standard

2    or limitation . . . and to apply any appropriate civil penalties (except for actions

3    [against the EPA Administrator]).” 42 U.S.C. § 7604(a).  The Clean Air Act broadly

4    defines an “emission standard or limitation.”  *See* 42 U.S.C. § 7604(f).  However, just

5    because there appears to be an emission standard or limitation that falls within the

6    scope of the applicable SIP does not automatically make it a specific and therefore

7    enforceable SIP strategy or measure as opposed to the SIP’s overall objectives or

8    aspirational goals.  *See Bayview Hunters*, 366 F.3d at 701.  Ultimately, enforcing a SIP

9    is a matter of interpretation.

10         “In interpretating a SIP, [courts] begin with a look toward the plain meaning of

11   the plan and stop there if the language is clear.”  *SAFE v. EPA*, 488 F.3d at 1095.

12   Courts interpret SIPs “based on their plain meaning when such a meaning is apparent,

13   not absurd, and not contradicted by the manifest intent of [the] EPA, as expressed in

14   the promulgating documents available to the public.”  *Id.* at 1100.  When a SIP is

15   ambiguous, courts “defer to [the] EPA’s interpretation if it is reasonable.”  *El Comité*,

16   786 F.3d at 696.  And courts interpret the SIP “in light of the overall statutory and

17   regulatory scheme.”  *Id.* at 696–97 (quoting *Bayview Hinters*, 366 F.3d at 701).  Courts

18   have referred to the proposed notices of approval, the final action approving the SIP,

19   the Code of Federal Regulations, and the materials cited within those publicly

20   available sources when interpreting the scope of an SIP and its enforceable

21   commitments.  *See, e.g.*, *El Comité Para El Bienestar de Earlimart v. Warmerdam*, 539

22   F.3d 1062, 1067–68 (9th Cir. 2008).  When determining what constitutes a

23   commitment that is enforceable by a district court, the Ninth Circuit has focused on

24   whether the specific language of the SIP is mandatory and non-discretionary or

25   permissive, and whether the strategy or goal at issue is within the control of the State

26   or relevant agency.  *See Committee for a Better Arvin*, 786 F.3d at 1179–80.

27         There can be no question that Defendants committed the San Joaquin Valley to

28   an enforceable emission standard or limitation actionable under the Clean Air Act’s

1   citizen-suit provision, and Defendants concede this point.  (*See* MSJ Opp'n at 1–2.)

2   The EPA's final approval of the San Joaquin Valley's 1997 Eight-Hour Ozone SIP in

3   2012 relied on submissions in Defendants' 2011 proposed SIP revisions that

4   "contain[ed] the State's enforceable commitment 'to develop, adopt, and submit

5   contingency measures by 2020 . . . and in a letter dated November 18, 2011 . . . ,

6   CARB confirmed that [the] EPA's understanding of this enforceable commitment is

7   correct."[8]  The EPA, CARB, and this Court understand the plain text of the final

8   approval to provide an enforceable commitment.[9]  The question is what the scope of

9   this commitment is and therefore the scope of any order enforcing this commitment.

10   (*See* MSJ Opp'n at 6–8.)

11       Defendants do not contest that the minimum scope of the commitment is to

12   craft contingency measures, but they argue that there is no substantive scope to that

13   commitment.  (*See* MSJ Opp'n at 6.)  That is, Defendants argue that all that can be

14   compelled here is what is stated in the Code of Federal Regulations: a "[c]ommitment

15   to develop, adopt and submit by 2020 contingency measures to be implemented if

16   advanced technology measures do not achieve the planned reductions and

17   attainment contingency measures meeting the requirements of [42 U.S.C.

18   section 7502(c)(9)], pursuant to [42 U.S.C. section 7511a(e)(5)] as given on page 4."

19   40 C.F.R. § 52.220(396)(ii)(A)(2)(i).  Plaintiffs ask this Court to go further, however,

20   arguing that "the commitment broadly includes applicable contingency measure

21   requirements, which EPA interpreted in the notice of proposed rulemaking made

22   available to the public."  (ECF No. 26 at 2–3 (Plaintiffs' Reply).)  Plaintiffs' proposed

23   order suggests language directing Defendants to develop, adopt and submit

24   attainment contingency measures "to achieve reductions of 3 percent of the adjusted

---

[8] 2012 Final Approval of the San Joaquin Valley's 1997 Eight-Hour Ozone SIP, 77 Fed. Reg. at 12,664.

[9] *See* 2012 Final Approval of the San Joaquin Valley's 1997 Eight-Hour Ozone SIP, 77 Fed. Reg. at 12,664 ("With respect to the requirement for contingency measures . . . , CARB confirmed that [the] EPA's understanding of this is correct." (citing CARB Res. 11-22; 11/18/2011 Letter from CARB to the EPA re Contingency Measures; Status Report at 25–27)).

1   2002 base year inventory . . . no later than 180 days from the date of this order." (ECF

2   No. 17-3 at 2.)

3        Plaintiffs, however, are unable to point to language evincing a commitment to

4   adopt contingency measures to achieve a three percent reduction.  First, Plaintiffs

5   point to language in the portion of the EPA's proposed approval of California's SIP

6   governing contingency measures where the EPA noted that "[a]dditional guidance on

7   the [Clean Air Act] contingency measure provisions is found in the General Preamble

8   at 13510–13512 and 13530."[10]  The EPA's proposed approval went on to say that the

9   "guidance indicates that states should adopt and submit contingency measures

10  sufficient to provide a 3 percent emissions reduction . . . ."[11]  As an initial matter,

11  however, the General Preamble was intended to "provide the public with advance

12  notice of how EPA *generally intends* to interpret various requirements and associated

13  issues that have arisen under title I of the [Clean Air Act Amendments of 1990]."[12]  This

14  language suggests that the three percent standard for contingency measures is

15  general guidance that is more akin to an aspirational goal, *see Citizens for a Better*

16  *Environment v. Deukmejian*, 731 F. Supp. 1448, 1459–61 and n.21 (N.D. Cal. 1990),

17  rather than an enforceable obligation.  Indeed, the summary to the General Preamble

18  itself proclaims that these are "preliminary interpretations, and thus do not bind the

19  States and the public as a matter of law."[13]

20       Turning to the specific language in the EPA's proposal approving California's

21  SIP that "states should adopt and submit contingency measures sufficient to provide a

---

[10] 2011 Proposed Approval of the San Joaquin Valley's 1997 Eight-Hour Ozone SIP Revisions, 76 Fed. Reg. at 57,863.

[11] 2011 Proposed Approval of the San Joaquin Valley's 1997 Eight-Hour Ozone SIP Revisions, 76 Fed. Reg. at 57,863).

[12] State Implementation Plans; General Preamble for the Implementation of Title I of the Clean Air Act Amendments of 1990, 57 Fed. Reg. 13,498, 13,499 (Apr. 16, 1992) (codified at 40 C.F.R. Part 52) ("General Preamble to the Clean Air Act of 1990") (emphasis added).

[13] General Preamble to the Clean Air Act of 1990, 57 Fed. Reg. at 13,498.

1   3 percent emissions reduction . . . [,]"[14] this language is likewise not binding or

2   mandatory.  The language is not directed at California specifically, despite being in a

3   proposal approving California's SIP, and uses the word "should," rather than more

4   mandatory language.  Consistent with the reference to the General Preamble

5   immediately preceding this sentence, this language is not an enforceable strategy.

6   At oral argument, Plaintiffs pointed to language in section F.3 of the proposed

7   rule to approve the SIP at issue that discussed contingency measures in a manner that

8   appeared to suggest a three percent requirement.[15]  There, the EPA noted that a

9   Reasonable Further Progress demonstration it proposed to approve had sufficient

10  excess reductions of nitrogen oxide ("$NO_x$") "to provide *the 3 percent* of adjusted

11  baseline emissions reductions needed to meet the [Reasonable Further Progress]

12  contingency measure requirement for 2011, 2014, 2017 and 2020."[16]  According to

13  Plaintiffs, the EPA's statement that it was approving these contingency measures

14  "based in part on CARB's commitment to submit by 2020 additional contingency

15  measures meeting the requirements of" section 172(c)(9) of the Clean Air Act should

16  be interpreted to likewise require a three percent reduction in baseline emissions.

17  However, as Defendants pointed out, footnote 36 belies that conclusion, with the EPA

18  stating that these contingency measures "should, at a minimum, ensure that an

19  *appropriate level* of emissions reduction progress continues to be made if attainment

20  is not achieved and additional planning by the State is needed."[17]  With this context, it

---

[14] 2011 Proposed Approval of the San Joaquin Valley's 1997 Eight-Hour Ozone SIP Revisions, 76 Fed. Reg. at 57,863.

[15] *See* 2011 Proposed Approval of the San Joaquin Valley's 1997 Eight-Hour Ozone SIP Revisions, 76 Fed. Reg. at 57,864 and n.36.

[16] 2011 Proposed Approval of the San Joaquin Valley's 1997 Eight-Hour Ozone SIP Revisions, 76 Fed. Reg. at 57,864 (emphasis added).

[17] 2011 Proposed Approval of the San Joaquin Valley's 1997 Eight-Hour Ozone SIP Revisions, 76 Fed. Reg. at 57,864 n.36 (emphasis added) (citing General Preamble to the Clean Air Act of 1990, 57 Fed. Reg. at 13,524).

1  is clear that the language cited by Plaintiffs does not constitute an enforceable
2  commitment.

3       The applicable SIP required that California "develop, adopt and submit by
4  2020 . . . attainment contingency measures meeting the requirements of [Clean Air
5  Act section] 172(c)(9) . . . ." 40 C.F.R. § 52.220(396)(ii)(A)(2)(i).  The Court finds that the
6  SIP only requires that such contingency measures have been submitted by 2020 and
7  lacks any substantive requirement that this Court may impose.

8            **3.    Defendants Violated the Enforceable Commitment.**

9       As stated before, Defendants have never contested liability, only questioning
10  the scope of the remedy, which was implicitly a challenge to the scope of the SIP and
11  the enforceable scope of the citizen-suit provision.  (*Compare with* State Defs.' Answer
12  at 9 (fourth affirmative defense claiming that "[t]he Court lacks subject matter
13  jurisdiction because the Clean Air Act citizen suit provision does not authorize suits
14  against [S]tates for failure to adopt control measures[]").)

15      **C.    Conclusion**

16       For the reasons set forth above, the Court finds that Defendants made an
17  enforceable "[c]ommitment to develop, adopt and submit by 2020 . . . attainment
18  contingency measures meeting the requirements of [Clean Air Act section]
19  172(c)(9) . . . ." 40 C.F.R. § 52.220(396)(ii)(A)(2)(i).  The EPA has adopted that
20  commitment, which now has the force of federal law.  Defendants have violated this
21  duty by failing to craft such contingency measures, and the Court will issue a remedial
22  order to enforce this requirement.

23  **III.    Motion to Quash Offer of Judgment as Null and Void**

24       On December 19, 2022, Plaintiffs claim that "Defendants attempted to invoke
25  Rule 68 of the Federal Rules of Civil Procedure ('Rule 68') by emailing the Offer of
26  Judgment to counsel for [Plaintiffs]."  (Rule 68 Mot. at 2.)  Plaintiffs seek to nullify and
27  void the Offer of Judgment.  (*See id.*)  This is mostly a dispute about future
28  recoverable fees available to Plaintiffs' counsel following the Offer of Judgment.  (*See*

Rule 68 Mot. at 4–11; ECF No. 27 at 7–8 (Defendants' Opposition to Plaintiffs' Rule 68 Motion).)  At oral argument, the Court advised Plaintiffs that it was unclear whether Plaintiffs' Rule 68 Motion was ripe and that it might potentially be mooted out by the Court's decision.  As such, the Court suggested to Plaintiffs that the Court withhold submission and a decision on the Rule 68 Motion until shortly after issuing a decision on Plaintiffs' Motion for Summary Judgment.  Plaintiffs concurred, indicating that they would alert the Court should Plaintiffs need a decision on the Rule 68 Motion. Defendants did not object to this approach.

Accordingly, the Court is withholding submission on Plaintiffs' Rule 68 Motion at this time.  Within thirty days of this Order, Plaintiffs should inform the Court whether the issues raised in their Rule 68 Motion are now ripe for adjudication.

## IV.   Remedy

When this Motion for Summary Judgment was filed, the parties had a significant disagreement regarding the timing of any Court order, with the Plaintiffs requesting that Defendants be ordered to submit attainment contingency measures to the EPA within six months, and State Defendants arguing that they are entitled to eighteen months, corresponding to the period provided by the Clean Air Act for a State to remedy a finding that a State has failed to timely submit a required element of a SIP before the EPA can implement sanctions, see 42 U.S.C. § 7509(a).  However, after oral argument, Defendants submitted the Supplemental Declaration of Sylvia Vanderspek (ECF No. 40), the Chief of the Air Quality Planning and Sciences Division at CARB and "the lead manager responsible for CARB's Clean Air Act state implementation planning, including developing and submitting contingency measures . . . ."  (Declaration of Sylvia Vanderspek (ECF No. 21-1) at ¶¶ 2-3.)  In her Supplemental Declaration, Ms. Vanderspek indicated that CARB had been able to identify a contingency measure that it anticipates submitting to the EPA by the end of November, and that she was "confident CARB can submit the planned contingency measure to [the] EPA by the end of January 2024."  (*See generally* Vanderspek Suppl.

1    Decl.)  While the Court is cognizant of the fact that Plaintiffs submitted their draft order

2    in November 2022, the end of January 2024 is roughly six months after the imposition

3    of this Order as requested by Plaintiffs in that Order.  Considering the equitable

4    factors cited by Plaintiffs (MSJ Opp'n at 12 (citing *NRDC v. Train*; *Sierra Club v.*

5    *Thomas*, 658 F. Supp. 165, 170 (N.D. Cal. 1987); *Ass'n of Irritated Residents v. United*

6    *States Env't Prot. Agency*, No. 18-cv-01604-YGR, 2018 WL 354885, at *1 (N.D. Cal. July

7    24, 2018))), specifically including the June 15, 2024 attainment deadline and the

8    December 15, 2024 date by which time the EPA Administrator must determine

9    whether an area has met attainment, see 42 U.S.C. § 7511(b)(2), the Court concludes

10    that requiring Defendants to submit its proposed contingency measures by January

11    31, 2024, along with interim status reports, is reasonable.

12    **ORDER**

13        Based on the foregoing, the Court concludes that Defendants are in violation of

14    the Clean Air Act because of their failure to timely develop, adopt, and submit

15    attainment contingency measures meeting the requirements of section 172(c)(9), 42

16    U.S.C. § 7502(c)(9), as required by the 1997 Eight-Hour Ozone state implementation

17    plan, 40 C.F.R. § 52.220(396)(ii)(a)(2)(i), which constitutes a violation of "an emission

18    standard or limitation under this chapter" within the meaning of 42 U.S.C. section

19    7604(a)(1).  Defendants are hereby ORDERED to develop, adopt, and submit

20    attainment contingency measures meeting the requirements of 42 U.S.C.

21    section 7502(c)(9) by no later than January 31, 2024.

22        To ensure Defendants meet this deadline, the Court ORDERS Defendants to file

23    with the Court the conceptual document that will be posted for public review that is

24    referenced in paragraph four of the Supplemental Vanderspek Declaration, as well as

25    the proposed measure to be considered by CARB's Board, within three days of their

26    being made available to the public.  The Court SETS a status conference for October

27    5, 2023 at 1:30 PM, and ORDERS the Parties to submit a Joint Status Report by

28    September 28, 2023.

1       The Court further ORDERS Plaintiffs to indicate to the Court within thirty days of

2 this Order whether the issues raised in the Rule 68 Motion are moot.

3       The Court will retain jurisdiction over this matter.

4

5       IT IS SO ORDERED.

6

7 Dated:   **July 20, 2023**

8                              Hon. Daniel J. Calabretta

9                              UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16 DJC3 – ccejn.22cv1714.msj